IN THE MATTER OF PUBLIC SERVICE HOLDING CORPORATION; COOPERATIVE FINANCE CORPORATION,
Intervenor Below, Appellant,

*vs.*

CLAIR J. KILLORAN, as Receiver of Public Service Holding Corporation,
Appellee.

*Supreme Court, On Appeal, February 20, 1942.*

LAYTON, C. J., and RICHARDS, RODNEY, SPEAKMAN and TERRY, JJ., sitting.

*Marvel & Morford* and *William H. Bennethum,* and *Judd L. Beckoff,* of New York City, for appellant.

*Stewart Lynch,* (*Collins J. Seitz,* of counsel), for appellee.

LAYTON, Chief Justice, delivering the opinion of the court:

We pass by the appellee's motion to dismiss this appeal based on non-joinder of parties, and proceed at once to the merits. The appeal involves the interrelations of three corporations. Public Service Holding Corporation is in receivership. The voting control of the corporation is in the hands of one Garland and his associates. Cooperative Finance Corporation, a large stockholder of Public Service Holding Corporation, is under Garland's absolute control. The assets of any value of the receivership estate consist of shares of the common stock of Automatic Signal Corporation.

Public Service Holding Corporation was organized under Delaware law by Garland in 1931. Its capitalization appears to be 2000 shares of cumulative preferred stock of the par value of $50.00, of which 1991 shares are outstanding; 300,000 shares of Class A Common stock of the par value of $1.00, of which 230,891 shares are outstanding; and 30,000 shares of common stock of the par value of $1.00 of which 28,994 shares are outstanding. On May 5, 1939, Curtis H. Veeder, a large stockholder of the corporation, filed a bill of complaint in the court below alleging insolvency of the corporation, and praying for the appointment of a receiver. It was alleged that Garland dominated the company's activities and manipulated its assets for his per-

sonal benefit until 1937, when he was convicted of violations of the federal postal laws in connection with sales of the company's stock, and was sentenced to an imprisonment of two years; that subsequent to Garland's conviction, a new board of directors and new officers were elected; that the company had never functioned as an active business corporation, and had no reason for existence in that it had no income except such as might be declared and paid on the shares of stock owned by it in certain other corporations, among which were shares of common stock of Automatic Signal Corporation; that it was unlikely that any dividends would be declared on these shares for some time to come; and that it was to the interest of all stockholders and creditors that a receiver be appointed with the view of realizing as much as possible from the assets, to pay the corporation's debts and to distribute any surplus among the stockholders entitled thereto. On May 24, 1939, the corporation, pursuant to a resolution of its board of directors, filed an answer admitting the well pleaded and material facts set forth in the bill of complainant, and consenting to the jurisdiction of the court, including the power of the Chancellor to appoint a receiver. It appears that when Garland was faced with imprisonment the affairs of the corporation were put in the hands of one Basanta who demanded complete control, and the board of directors, at the time of filing the answer, was not under Garland's domination. On May 29, 1939, Clair J. Killoran was appointed receiver. On November 1, 1939, certain other stockholders were allowed to intervene as parties complainant. On December 5, 1939, the receiver filed a report from which it appeared that the corporation had cash assets in the sum of $22.63; that it owned, *inter alia*, 240,425 shares of the common stock of Automatic Signal Corporation, approximately thirty five percent thereof (later appraised at $96,170), and 5000 shares of Class B stock of Municipal Capital and Acceptance Corporation (later appraised at $500) ; and that its indebt-

edness was in the sum of $6,103.42. The appraisement is not included in the record, but it seems that other assets of the corporation, consisting of shares of stock in various corporations, had little or no value. On February 29, 1940, Cooperative Finance Corporation, alleging that it was the owner of 40,000 shares of the Class A common stock of the corporation, filed a petition alleging that the corporation was not insolvent; that Basanta, in effect, compelled Garland, by threat of proceedings for a receivership, to turn over to him the voting control of the corporation; that the bill of complaint was not for the purpose of liquidating and winding up of the corporation's affairs, but one solely for the purpose of defeating any attempt on the part of the petitioner or Garland, or both, to regain control of the corporation; and it was prayed that the receiver be discharged. To this petition, the corporation, the original complainant, and the intervening complainants, filed separate answers denying, *inter alia,* that the corporation was solvent. On May 9, 1940, the petitioner was allowed to intervene as a party defendant. It did not, however, press its petition to a hearing. The matter was allowed to lie dormant until June 6, 1941, when it filed what is called a supplemental petition alleging that on June 2, 1941, the petitioner offered in writing to purchase from the receiver sufficient shares of the authorized and unissued Class A common stock of the corporation at its par value to pay the indebtedness as shown by the receiver's report, the court expenses and reasonable expenses of the receivership. It was prayed that the receiver be ruled to show cause why the offer should not be accepted, and, upon payment of claims of creditors, why the receiver should not be discharged. On July 15, 1941, the matter of the petition was heard by the Chancellor. It was in evidence that the corporation's indebtedness was approximately $13,000; that the corporation's only hope of income was from dividends which might be declared on the Automatic Signal Corporation stock; that for the past five

years the corporation had received no income from that, or any other, source; that Automatic Signal Corporation had only about one-third of its necessary working capital, and was constantly compelled to borrow money to conduct its business; that the banks with which it dealt had informed the company that it would grant no further accommodation, but would call its loans, if there was any possibility of Garland's getting control of the company through the large stock ownership of Public Service Holding Corporation; that the future of Automatic Signal Corporation was discouraging not only because of its financial condition, but also because it was almost impossible to obtain necessary materials, including steel and rubber, on account of governmental priorities; that dividends in arrears on the preferred stock of Public Service Holding Corporation amounted to $30,000, and its common shares had no value at all; that the holders of approximately seventy-five percent of the preferred stock were opposed to the acceptance of the offer of Cooperative Finance Corporation; and that the minimum annual expense of carrying on the corporation was approximately $700 for the payment of which it had no income whatever. It appears from the record that the Chancellor regarded the matter as one calling for the exercise of judicial discretion. On September 20, 1941, the petition was dismissed without an opinion.

The appellant's argument is that the Chancellor had no discretion in the premises; but that it had the absolute right, by means of its offer, to relieve the corporation's condition of insolvency and to have a restoration to it of its property. *Milwaukee & Minnesota R. R. Co., et al., v. Soutter*, 2 *Wall.* 510, 17 *L. Ed.* 900, is cited as an authority; but the case in no way supports the contention. There Soutter and another had filed a bill to foreclose a mortgage given by LaCrosse and Milwaukee Railroad Company to secure bonds in the amount of one million dollars, and a receiver was appointed for the company. Milwaukee and Minnesota.

Railroad Company was the successor in title and interest to the company in receivership and owner of the equity of redemption in the mortgaged property. It offered to pay the entire mortgage debt on condition that the property be restored to its possession. The mortgaged railroad was ninety five miles in length; was a part of a direct line running from Milwaukee to the Mississippi River, one of the most valuable routes in the country, both present and prospective; was in good repair; and for the year preceding the application to discharge the receiver its gross earnings were almost $800,000. The earnings had fallen off sharply since that time but the court was of opinion that the circumstances that produced it were not of a character to continue the railroad in the possession of a receiver. It was in these circumstances that the court said, that while, ordinarily, the appointment and discharge of a receiver were matters of discretion in the court below with which the Supreme Court would not interfere, yet when the amount of the debt had been definitely fixed, the right of the defendant owner to pay the sum and to have a restoration of its property by discharge of the receiver did not depend on the discretion of the court below. Nor is the appellant helped at all by the dictum of this court in *Badenhausen Co. v. Kidwell,* 12 *Del. Ch.* 370, 107 *A.* 297. There it was said that if it be shown that the corporation (in receivership) has attained a condition in which it can meet its obligations in the usual course of business, or that there is a reasonable prospect that its business can be successfully continued notwithstanding any deficiency of assets, the Chancellor would discharge the receivers and permit the corporation to resume its business.

The appellant's offer was not to pay the debts of the corporation. It proposed to purchase authorized but unissued Class A stock. This stock the appellant calls treasury stock and, apparently, it regards the stock as an asset like any other item of property in the hands of the receiver.

In the instant case the question is not of the first importance; but treasury stock ordinarily, is stock which has been issued as full paid to stockholders and subsequently acquired by the corporation to be used by it in furtherance of its corporate purposes. Stock which is merely to be held as unsubscribed for and unissued is not usually regarded as treasury stock. 11 *Fletcher, Cyc. Corp.,* #5088. Undoubtedly, this conception of treasury stock was in the mind of the court in *Henderson v. Plymouth Oil Co.,* 15 *Del. Ch.* 40, 131 *A.* 165, and in *Karasik v. Pacific Eastern Corp.,* 21 *Del. Ch.* 81, 180 *A.* 604. Whatever may be the limitations upon the pre-emptive right of stockholders as applied to authorized but unissued stock (See 13 *Am. Jur.* 311; *Kingston v. Home Life Ins. Co.,* 11 *Del. Ch.* 258, 101 *A.* 898) it is clear that the stockholders were, at the least, entitled to be heard in respect of the appellant's offer; and yet, they were entirely ignored.

In an effort to bolster its contention, the appellant calls its offer a plan of re-organization; but a re-organization of an insolvent corporation always involves changes in the existing legal rights of some, if not all, of those having rights in connection with the property involved. Forms of re-organization are many. Ordinarily, they are accomplished by a readjustment of securities pursuant to an agreement of stockholders and creditors without foreclosure; or by a voluntary transfer of the corporation's property to a new corporation formed by the stockholders and other persons financially interested in the old corporation, without judicial sale; or in connection with the purchase of the property at a judicial sale and the formation of a new corporation by the purchasers to take over the property and continue the business. Action by stockholders, bondholders and creditors, or corporate action in some form would seem to be required. See 15 *Fletcher, supra, Ch.* 62; *Bull ·v. International Power Co.,* 87 *N. J. Eq.* 1, 99 *A.* 111. It is unnecessary to consider whether a re-organization may be directed and

effected by the court itself. See 15 *Fletcher, supra,* § 7212. It is sufficient to say that the mere selling of authorized but unissued stock is not, in any sense, a re-organization.

The appellant's proposal ignored the corporation's board of directors and the stockholders in general. In particular, the proposal was in entire disregard of the wishes of the great majority of preferred stockholders and of the hard fact that the corporation's only source of income had long since run dry with but little hope of restoration. The effect of granting the application would have been to increase the number of outstanding Class A shares, already having little or no value, in the face of an almost certain recurrence of a condition of insolvency. It is clear, as the proposal was presented to the Chancellor, that he was without power to order its acceptance by the receiver. Moreover, if the matter is at all entitled to be looked on as one within the Chancellor's discretion—and that is the appellant's most plausible ground—it is in no better case. In *Radio Corporation of America v. Philadelphia Storage Battery Co.,* 23 Del. Ch. 289, 6 A. 2d 329, we said that the essence of judicial discretion is the exercise of judgment directed by conscience and reason, as opposed to capricious or arbitrary action; and where a court had not exceeded the bounds of reason in view of the circumstances, and has not so ignored recognized rules of law or practice so as to produce injustice, its legal discretion has not been abused; for the question is not whether the reviewing court agrees with the court below, but rather whether it believes that the judicial mind in view of the relevant rules of law and upon due consideration of the facts of the case, could reasonably have reached the conclusion of which complaint is made. Tested by this rule, no abuse of discretion has been shown. On the contrary, the court below would not have been within the protection of the rule had it granted the prayer of the appellant's petition. In this view of the matter, the order of dismissal is not appealable. 1 *Whitehouse, Eq. Pr.* § 506;

16 *Fletcher, supra,* § 7770; *High, Receivers,* (*4th ed.*) § 841; *Milwaukee & Minnesota R. R. Co. v. Soutter, supra.*

Finally, it is urged that this court should permit a special meeting of stockholders to obtain the opinion of the real parties in interest, as the present board of directors does not truly represent them. This is plainly an afterthought. The matter was not presented to the court below; was not, of course, considered; and no assignment of error was made in that respect. Assuming, but by no means deciding, that the contention has merit in the circumstances shown, it will not be considered here.

The order of dismissal is sustained.