CURTIS H. VEEDER,

*vs.*

PUBLIC SERVICE HOLDING CORPORATION, a Delaware corporation.

*New Castle, February 10, 1947.*

*Clair J. Killoran* and *C. Stewart Lynch, in pro se.*

*Reuben Golin,* of Hahn & Golin, of New York City, for Henry A. Haugh, Jr., and others, preferred stockholders, acting as a Preferred Stockholders Committee.

*Richard S. Rodney,* of Morris, Steel, Rodney, Nichols & Arsht, and *W. Arthur Countryman, Jr.* (of Shipman & Goodwin), of Hartford, Conn., for Philip H. Graham and others, minority common stockholders, acting as a committee for that class of stock.

*Daniel J. Layton,* of Georgetown, *Albert L. Simon,* of Wilmington, and *Samuel Hershenstein* of New York, for Public Service Holding Corporation.

*Arthur G. Logan,* for Amos Treat & Co. and others.

HARRINGTON, Chancellor: By an order dated May 26, 1939, this court appointed Clair J. Killoran, of Wilmington, receiver for Public Service Holding Corporation. The bill alleged insolvency in that the corporation was unable to pay its debts as they matured in the usual course of business. See *Whitmer v. William Whitmer & Sons, Inc.*, 11 *Del. Ch.* 222, 99 *A.* 428; *Freeman v. Hare & Chase*, 16 *Del. Ch.* 207, 142 *A.* 793.

The answer of the corporation admitted the allegations of the bill.

Public Service Holding Corporation was not engaged in any business enterprises, but was merely the holder and owner of shares of stock in various other subsidiary corporations. It had both preferred and common stock, and most of the latter (the voting stock) was quite closely held, so that control was more or less centralized. The entire corporate chain, of which Public Service Holding Corporation was the head, was quite complicated and need not be stated. A block of 251,925 shares of common stock of Automatic Signal Corporation appeared to be its most valuable asset, though it had but little market value until long after the receiver had been appointed, and then only in small lots. In February of 1940 and in June of 1941, Co-operative Finance Corporation, the holder of a majority of the common stock of Public Service Holding Corporation, filed petitions seeking the approval of suggested plans for the payment of its debts and the receivership expenses, and the discharge of the receiver. A petition for the same purpose, though based on a somewhat different plan, was filed by Eugene Stirlen, a stockholder, in October of 1941. All of these petitions were opposed by the Preferred Stockholders Committee, representing about 75% of that stock, and, after extended hearings, were denied because (1) the corporation had no income, or any reasonable prospects of any income, with which to pay its necessary operating expenses, and (2) the common stock had little, if any, equity in the cor-

porate assets. Co-operative Finance Corporation appealed to the Supreme Court, but the order entered by this court, was affirmed in February of 1942. *In re Public Service Holding Corp.*, 26 *Del. Ch.* 436, 24 *A.* 2d 584. The questions presented appear in that opinion.

Three petitions were also filed under *Chapter X* of the *Federal Bankruptcy Act,* 11 *U.S.C.A.* § 501 *etc.,* in New York and Connecticut by either alleged creditors, certain holders of common stock, or by the corporation, but all were ultimately dismissed. One of these cases went to the Circuit Court of Appeals, *In re Public Service Holding Corporation,* (2 *Cir.*) 141 *F.* 2d 425, but the order of the lower court was affirmed. Some of this litigation was not disposed of until 1945. In the meantime a bill was filed in this court seeking to set aside the appointment of the receiver on the ground of fraud, but, after a hearing, was dismissed. After some preliminary argument at least one other appeal to the Supreme Court from an order entered by this court was dismissed by agreement of counsel. There were various other details, but this statement gives some idea of the litigation in which the receivership was involved. On several occasions, the receiver sought authority to sell the corporate assets at public sale in order to wind up the receivership, but the stocks held were not listed on the exchange and no sale was ever made because of the difficulty in procuring a fair price. By the early part of 1946, because of fortuitous circumstances, the apparent value of Automatic Signal Corporation common stock, owned by Public Service Holding Corporation, had materially increased and had a market value approaching $750,000. The receiver was, therefore, discharged on June 14, 1946, pursuant to a plan whereby the corporation was to borrow money to pay its debts and the receivership expenses, and any preferred stockholders, at their option, could surrender their stock for ultimate cancellation on payment of its par value, together with accrued and unpaid dividends thereon up to the time of the receiver's appointment.

The case is now before this court on application for allowances for alleged services and for reasonable and necessary out-of-pocket expenses. Both Clair J. Killoran, the receiver, and C. Stewart Lynch, his attorney, were agents of this court and are entitled to reasonable compensation for their services and to reimbursement for incidental necessary expenses. *McWilliams, Jr., Co. v. Missouri- Kansas Pipe Line Co.,* 21 *Del. Ch.* 308, 190 *A.* 569. Mr. Killoran acted as receiver for Public Service Holding Corporation from May, 1939 until his discharge in June of 1946. His attempts to wind up its affairs in a reasonable time were delayed by litigation both in and out of the State, and by circumstances already referred to. Delay has, however, proven beneficial to the corporation, as Automatic Signal Corporation is now paying dividends on its stock.

In April of 1946, the receiver procured authority to attend a stockholders' meeting in Connecticut for the purpose of voting the block of stock held by Public Service. At that meeting, he deemed it advisable to aid in electing a new board of directors. This resulted in a change of policy, and a dividend was soon declared on Automatic Signal's outstanding stock. Mr. Killoran attended to the various details required in administering the receivership, including a voluminous correspondence, but concedes that most of his activities related to defending the various efforts to end or to supersede it. Many conferences were required, but his activities in this respect were largely of a supervisory nature and the actual litigation was conducted by his attorney. His efforts to recover the proceeds arising from the sale of 50,000 shares of Automatic Signal Corporation common stock by intervening in the Stirlen bankruptcy proceedings in the United States District Court of Delaware were largely of that nature. He seeks an allowance of $12,500, but $6,000 seems adequate and will be allowed, together with out-of-pocket expenses.

C. Stewart Lynch, the receiver's attorney, participated in all legal proceedings in which it was sought to terminate

or supersede the receivership, with one exception. Pursuant to authority, he went to New York prepared to defend the first petition filed under *Chapter* 10 of the *Federal Bankruptcy Act,* but the court held that the receiver was not an interested party. Mr. Lynch spent 42 days, or parts of days, in trial work in this court; seven days in New York and Connecticut, and one day in Washington, taking depositions for trial work. This does not include the time and effort spent in the appeals to the Supreme Court from orders of this court; 650 stockholders' claims filed were examined; and a voluminous correspondence was carried on. In 1931, a number of shares of stock of Automatic Signal Corporation were assigned by Stirlen Corporation to Public Service Holding Corporation in exchange for its stock. By 1939, some of these shares had disappeared, but the corporate books did not disclose the transfers. A pleading filed by the corporation on October 11, 1945, objecting to an order to sell the corporate assets, disclosed that subsequent to 1931 Public Service Holding Corporation had entered into an agreement with Stirlen Corporation and Automatic Signal Acceptance Corporation which involved 50,000 shares of Automatic Signal Corporation stock, the certificates for which were in the possession of Samuel Hershenstein, as trustee for certain bondholders of Automatic Signal Acceptance Corporation. Mr. Lynch had some reason to believe that Public Service had rights in this stock, but had no clear proof. Stirlen Corporation was adjudicated a bankrupt by the United States Court for the District of Delaware, and Mr. Lynch, representing the receiver of Public Service, immediately intervened in that proceeding and sought to assert alleged rights in the shares in question. At a subsequent date, the controversy was compromised by the contending parties, the stock was sold for $122,000, and the proceeds were to be equally divided between Stirlen Corporation and the Trustee for Automatic Signal Acceptance Corporation bondholders. Public Service acquired no direct interest under that agreement, but, being the owner

of 90% of the Stirlen Corporation stock, subsequently bene-fited materially thereby. Mr. Lynch seeks an allowance of $35,000, but $22,500 seems adequate and will be allowed. His out-of-pocket expenses, amounting to $1,857.35, are not objected to, and will also be allowed.

The preferred stockholders committee, represented by Hahn & Golin, of New York, seeks an allowance from corporate funds of $25,000 for legal services rendered by Reuben Golin of that firm. The minority common stockholders committee, represented by Richard S. Rodney, of Wilmington, and W. Arthur Countryman, of Hartford, Connecticut, seeks an allowance from corporate funds of $2,000 for legal services and the repayment of $82.76 for out-of-pocket expenses incurred. The individuals, composing both committees, were permitted to intervene in this action; the preferred stockholders committee at an early stage of the receivership, and the members of the common stockholders committee on March 19, 1946. This does not mean, however, that their attorneys were authorized to act for the receiver.

Mr. Golin's claim is based on two contentions: (1) that he aided in preserving the corporate assets, and (2) that he rendered services in formulating the plan which resulted in lifting the receivership.

The claim of Messrs. Rodney and Countryman is likewise based on services rendered in connection with the Amos Treat & Company contract with the corporation, which resulted in the discharge of the receiver.

The corporate indebtedness was never very large and the creditors ran little risk of not being ultimately paid; but until recently only the preferred stockholders had much, if any, equity in the corporate assets.

Without any direction from this court, Mr. Golin actively participated with Mr. Lynch in most of the litigation, both in and out of the State, in which either alleged creditors, certain common stockholders, or the corporation unsuccess-

fully sought to terminate or supersede the receivership. He also successfully defended one of the alleged creditors' petitions in New York, filed under *Chapter* 10, 11 *U.S.C.A.* § 501, etc., of the *Federal Bankruptcy Act.*

When a receiver is appointed by this court and is represented by competent counsel, there is ordinarily no reason for any independent participation in the administration of the estate by stockholders of the insolvent corporation, or by their representatives. *McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Co., supra.* Voluntary services, amounting to a mere duplication of the efforts of the duly authorized agents of this court, no matter how meritorious, are, therefore, seldom compensable from corporate funds. *Id.* Any different rule would naturally result in a waste of assets.

A receivership is, however, comparable to a creditors' bill, and if the common fund is augmented or preserved by the independent or even supplemental efforts of representatives of stockholders, reasonable compensation may be allowed. *McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Co., supra; Buell v. Kanawha Lumber Corp., (D.C.)* 201 *F.* 762.

The receiver and his attorney were justified in defending attempts to end or supersede the receivership (*In re Paramount-Publix Corp., (D.C.)* 10 *F. Supp.* 504) ; but it can hardly be said that the action of others by aiding in maintaining the jurisdiction of this court is a preservation of assets within the meaning of *McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Company.* Notwithstanding the contention of the preferred stockholders' committee, lifting or superseding the receivership would not have necessarily resulted in a depletion of assets either in the form of the payment of unfounded claims or in the duplication of heavy administration expenses. It cannot be assumed that the rights of all parties would not have been protected by an appeal to the appropriate court.

Some preferred stockholders sought to have the corporate assets sold by the receiver as a means of liquidating their holdings, but it does not follow that their attorney should be compensated from corporate funds. The interest of the receivership estate was adequately represented by counsel, and so far as it was concerned there was no need for any co-ordinate action by others. *McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Co., supra.* Quite different facts were involved in *Re Paramount-Publix Corporation, (D.C.)* 10 *F. Supp.* 504, and if it can be reconciled with the *McWilliams* case, it seems unnecessary to extend the principle applied.

The preferred stockholders committee stresses the fact that in the first *Chapter X* petition in New York, the Federal Court, among other things, held that the petitioners were not creditors of Public Service Holding Corporation, despite the supporting testimony of a former executive officer of the corporation. But the alleged petitioning creditors were not asserting claims against the corporation, and their rights could have been determined if and when claims were filed.

Nor can any compensation be paid Mr. Golin from the corporate funds for services rendered the preferred stockholders committee in the negotiations resulting in the contract between the corporation and Amos Treat & Company. Under that contract, Amos Treat & Company not only agreed to lend the corporation sufficient funds to pay the debts and receivership expenses, but preferred stockholders, at their option, could also transfer their holdings to that company and receive par and the accrued and unpaid dividends thereon to the date of the appointment of the receiver. The payment of the debts and expenses was secured by the deposit of an adequate sum in this court. The agreement enabled preferred stockholders, at their option, to withdraw from the corporate enterprize with their original capital intact, and with some income thereon. That was the purpose of Mr. Golin's efforts. There was

no corporate reorganization or readjustment of the rights of all interested parties for their benefit (*In re Public Service Holding Corp.*, 26 *Del. Ch.* 436, 24 *A.* 2d 584) ; nor for the benefit of all classes of stockholders alone, because the rights of creditors were not in jeopardy, and *In re Memphis Street Railway Company*, 6 *Cir.*, 86 *F.* 2d 891, is not in point. Under the circumstances, it would hardly seem equitable and just to pay Mr. Golin's fees from the corporate funds, even though the agreement resulted in the discharge of the receiver and the return of assets.

In *McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Company, supra,* the Chancellor pointed out that in many cases, the scope of allowances made in equity receiverships was more limited than in statutory proceedings in the federal courts.

It is also difficult to escape the conclusion that the services rendered by Richard S. Rodney and W. Arthur Countryman, Jr., are in the same category and that they must look to their employers for compensation. Representing a minority group of common stockholders, they appeared before this court and suggested certain changes in the language of the proposed contract, so that it would clearly appear that any preferred stock, purchased by Amos Treat & Company, at the agreed price, could be taken over and retired by Public Service Corporation on the payment of a slightly higher price, if the corporation had the funds. They did nothing to increase or preserve the corporate assets, or to aid in any reorganization.

J. Sellers Bancroft and Roland Cardner, the appraisers originally designated by this court, appraised the assets of Public Service Holding Corporation on April 16, 1940, and their request for an allowance of $250 for each of them not being opposed, will be allowed. A later appraisement was made in 1946 by J. Sellers Bancroft and James McKeough, and the like sum of $250 each will also be allowed.

An order will be entered in accordance with this opinion.