CURTIS H. VEEDER

Complainant Below, Appellant,

*vs.*

PUBLIC SERVICE HOLDING CORPORATION, a Delaware Corporation.

Defendant Below, Appellees.

HENRY A. HAUGH, JR., EDWARD H. EAMES and HARRY A. WILCOX, Intervening Preferred Stockholders Acting as a Committee,

Petitioners Below, Appellants,

*vs.*

PUBLIC SERVICE HOLDING CORPORATION, a Delaware corporation,

Defendant Below, Appellee.

*Supreme Court, on Appeal, October 20, 1949.*

500

RICHARDS, C. J., and TERRY, CAREY and PEARSON, JJ., sitting.

*Daniel L. Herrmann,* and *Hahn & Golin,* of New York City, for appellants.

*Albert L. Simon,* for appellees.

CAREY, Judge, delivering the opinion of a majority of the court.

In 1939, the Chancellor appointed a receiver for the defendant corporation. Its sole assets consisted of stock in certain subsidiary corporations, which then had little value. For various reasons, the progress of the receivership was delayed over a period of several years, and eventually (for causes unrelated to the receivership) its assets so increased in value as to make it possible to terminate the receivership without disposing of those assets. For present purposes, there is no necessity to recapitulate all the various events which took place during the period of receivership. They are summarized in the opinion of the court below (29 *Del. Ch.* 396, 51 *A.* 2*d* 321). It will here suffice to mention only certain facts.

The present appellants constitute a committee of preferred stockholders representing about 75% of that class of stock. They were permitted to intervene and have taken an active part in all the proceedings. The receiver was discharged in 1946 according to a plan whereby the corporation borrowed enough funds to pay its creditors and the receiver's expenses, and the preferred stockholders were given the option to surrender their stock for cancellation at par, plus accrued dividends up to the date of appointment of the receiver. Thereafter, petitions were presented for allowances to the receiver and the various attorneys. Among them was a petition of these appellants for an allowance from corporate funds for the legal services rendered by Reuben Golin, of the firm of Hahn & Golin. The court below refused to make such an allowance, and the committee took this appeal. The sole question before us is whether under the circumstances of this case, we should reverse the Chancellor's refusal to make the requested allowance.

The power of an equity court in proceedings of the present nature to allow, out of corporate funds, counsel fees to the parties who have created or preserved such funds is unquestioned. It is said to rest upon the broad principle that those who share in a benefit which has been obtained at the expense of one, or a part only, of their number ought justly to share the expense by which they are enabled to benefit. 16 *Fletcher Cyc. Corp., (Perm. Ed.)* 555. In this State, the power has been exercised with considerable restraint, since courts ought not to be overly generous with money belonging to others. *McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Co.* (The *Mokan* case), 21 *Del. Ch.* 308, 190 *A.* 569. Moreover, a wide discretion must be reposed in the Chancellor, both in determining whether to make an allowance and in setting its amount, since he, in contrast to the appellate court, usually has direct first-hand knowledge of the nature and quality of the services rendered. On appeal, reversal should occur only where it appears that he has abused that discretion

or that in exercising it he has been guided by a misapprehension of law. 16 *Fletcher Cyc. Corp.,* (*Perm. Ed.*) 556.

With these general observations in mind, we turn now to appellants' contentions. They are based upon two types of services rendered: first, the preservation and protection of the corpus of the receivership estate; and, second, the formulation of a plan of reorganization which ultimately resulted in the termination of the receivership.

In connection with the first type of service, appellants refer to Mr. Golin's work in contesting three proceedings in federal courts in New York and Connecticut under *Chapter* X of the *National Bankruptcy Act,* 11 *U.S.C.A.* § 501, *et seq.* In one of those actions, the federal court refused to let the receiver intervene, and the burden of contesting that petition was successfully borne by Mr. Golin. In the other two cases, he worked with the receiver's counsel. It is urged that this work, although done without any direction from the Chancellor, was necessary in preserving the corpus in that it maintained the jurisdiction of the Delaware court over the corporation, exposed and defeated certain invalid claims and avoided a duplication of expenses. It is pointed out that the work, at least in the one case, was not a duplication of the receiver's efforts, since he was not an interested party and therefore could not resist the petition.

With respect to this part of the claim, we cannot say that the court below either abused its discretion or based its finding upon a misapprehension of law. As the Chancellor indicated, it cannot be assumed that administration of the corporate assets by a federal court would result either in the payment of unjust claims or in greater administration expense. Under the facts shown, it was not reversible error to determine that the action of appellants' counsel in maintaining or helping to maintain the jurisdiction of the Delaware court did not amount to a "preservation of assets", especially where that action was voluntarily taken

without prior direction of the court. We do not now decide that the defeat of attempted bankruptcy proceedings in cases of this type can never be compensable out of corporate assets, under any and all circumstances. The existence' or non-existence of such special circumstances as will justify an allowance is to be determined ⸣rom the facts of a particular case, and the Chancellor's finding should not be disturbed in the absence of manifest error. He found no such special circumstances here, and we think the record contains enough to support his view of the case.

With respect to the second type of service performed by Mr. Golin, to wit, formulation of a plan of reorganization, he claims considerable credit for the conception and negotiation of the plan eventually approved, except for the method of raising funds necessary to pay debts and expenses and to redeem the preferred stock. This detail was, of course, a very important part of the transaction. His idea was to sell stock for that purpose, whereas the scheme actually adopted was to borrow the money. That part of the negotiation was carried on without his knowledge and in his absence.

The appellants seek to draw an analogy between these services and those of Warrick in the *Mokan* case, *supra.* Actually, the differences are material. We shall mention only the most important one. In the *Mokan* case, Chancellor Wolcott found that Warrick's services in formulating and negotiating a settlement was largely responsible for the creation of the fund. Here, the elevation of the corporation from insolvency to solvency was the result of fortuitous circumstances. The settlement plan resulted in no corporate reorganization or readjustment of rights of parties.

Here again, the Chancellor found no justification for an allowance, and we cannot say that his conclusion is so unreasonable or unwarranted as to merit reversal. Whether we would have drawn the same conclusion from the evidence is unimportant.

Nothing said herein is meant to belittle the extent or quality of Mr. Golin's services. It would appear that he represented his clients ably and faithfully. Whether he should be compensated by them is a question not before us.

The decree of the Chancellor will be affirmed.

RICHARDS, Chief Justice (dissenting):

The only question involved in this appeal is whether Reuben Golin, of the firm of Hahn & Golin, is entitled to an allowance from the receivership estate of Public Service Holding Corporation as counsel for the intervening preferred stockholders.

In order to get a clear understanding of what has transpired it is necessary to review the litigation and the activities of those connected therewith.

After a bill had been filed in the Court of Chancery alleging that Public Service Holding Corporation, a Delaware corporation, was insolvent, and an answer admitting the allegations of said bill, Clair J. Killoran was appointed receiver for said corporation on May 26, 1939.

Public Service Holding Corporation, as its name implies, was a holding corporation, not actively engaged in business. It had both preferred and common stock, the latter which was the voting stock, being largely held by certain interests which controlled the corporation. It either controlled or was interested in a number of other corporations and had various complicated stock transactions with them. The common stock of Automatic Signal Corporation, of which it held 251,925 shares, appeared to be its most valuable asset. This stock appears to have had very little market value at the time the receiver was appointed.

In 1940 and 1941 Co-operative Finance Corporation, which held a majority of the common stock of Public Service Holding Corporation, submitted plans for the payment of

its debts and the expenses of the receivership, and thus bring about the discharge of the receiver. An additional effort was made by another stockholder in 1941 to accomplish the same purpose.

These efforts to discharge the receiver were opposed by the preferred stockholders committee representing about seventy-five percent of that stock. After a full hearing these applications were denied by the Chancellor on the grounds that the corporation not only had no income but had no reasonable prospects of any, and the additional ground that the common stock had little, if any, equity in the corporate assets.

An appeal from the order of the Chancellor was taken by Co-operative Finance Corporation to this court where it was affirmed. *In re Public Service Holding Corporation*, 26 *Del. Ch.* 436, 24 *A.* 2d 584.

A bill was filed in the Court of Chancery asking that the appointment of the receiver be revoked on the ground of fraud but said request was refused.

Another appeal was taken to this court from an order made by the Chancellor which was finally dismissed by agreement of counsel.

Three petitions were filed in the United States District Court, two in the State of New York and one in the State of Connecticut, under *Chapter X of the Federal Bankruptcy Act* all of which were eventually dismissed.

On more than one occasion the receiver contemplated selling the assets of the corporation and asked for authority to offer them at public auction, but in view of the fact that said assets consisted entirely of stock which was not listed on the stock exchange, it was deemed unwise to sell because of the uncertainty of obtaining a fair price.

During all of this time Stewart Lynch, Esq., of Wilmington, had been acting as attorney for the receiver and

had appeared for him in the various proceedings whenever it was necessary for any one to appear.

Reuben Golin, Esq., first appeared in the litigation as attorney for the intervening preferred stockholders who were allowed to intervene by order of the Chancellor dated November 1, 1939. Acting in that capacity he opposed efforts made in 1940 and 1941 to discharge the receiver, also the attempt made by the receiver to sell the assets of the corporation at a time when they seemed to have little value. From that time on he participated in every phase of the litigation. He conferred a number of times, both in New York and Wilmington, with Mr. Lynch, the attorney for the receiver, Mr. Devlin, Mr. Irvine, Mr. Hershenstein and the New York brokerage firm of Amos Treat & Company, about the best course to pursue in order to raise the necessary money to meet the financial needs of the corporation and bring about the discharge of the receiver.

Mr. Lynch testified that since September, 1939, he had been trying to learn if Public Service Holding Corporation had any interest in 50,000 shares of the common stock of Automatic Signal Corporation. Finally in 1945 it was disclosed to him by a supplemental and additional response, filed in the Court of Chancery, by Public Service Holding Corporation, that a loan was made by Public Service Holding Corporation of certain shares of stock to the Sterlen Corporation which stock was subsequently pledged as collateral security for a loan made by Automatic Signal Acceptance Corporation. By this information he was able to identify the 50,000 shares of common stock of Automatic Signal Corporation above referred to as the property of Public Service Holding Corporation.

The common stock of Automatic Signal Corporation increased in value and by 1946 it was realized that the shares of said stock owned by Public Service Holding Corporation were worth approximately $750,000.

About this time the interested parties began to talk

about a settlement of the affairs of the corporation and the discharge of the receiver. After conferences in New York and Wilmington between Mr. Irvine, Mr. Devlin, Mr. Lynch and Mr. Golin a plan by which to accomplish this purpose was practically agreed upon. This plan was to include payment of the administration fees and expenses, claims entitled to priority of payment, claims of general creditors, claims of preferred stockholders and claims of common and Class A stockholders. The funds with which to bring about its consummation were to be obtained by the sale of all holdings of stock in companies other than Automatic Signal Corporation, and if the amount derived from that source was not sufficient by the employment of the brokerage firm of Amos Treat and Company, as agents, to sell as much of the stock of Automatic Signal Corporation as was found to be necessary.

It was agreed that the administration fees and expenses were not to exceed $100,000, which was to be used for the purpose of paying the receiver, the receiver's attorney, Stewart Lynch, the preferred stockholders committee and their attorneys, Hahn & Golin and the common stockholders committee and their attorney.

The plan as above described was not carried out, but in lieu thereof the same persons, with the exception of Mr. Golin, and without consulting him, agreed upon another plan which was approved by the Chancellor and in pursuance of which the receiver was discharged. The material difference between this later plan and the former one, seems to have been that a loan was obtained for the corporation by Amos Treat and Company with which to finance it.

The Chancellor allowed Stewart Lynch, attorney for the receiver, $22,500, but did not make any allowance for Mr. Golin, attorney for the intervening preferred stockholders.

I am not unmindful of the fact that the funds in ques-

508

tion belong to others, consequently the court is not as free to dispose of them as is one who is spending his own money.

The original bill filed in this case alleged that Public Service Holding Corporation was insolvent and that allegation was admitted in the answer.

Mr. Lynch, the attorney for the receiver, claimed that he located 50,000 shares of stock of Automatic Signal Corporation which belonged to Public Service Holding Corporation but had been loaned by it to the Sterlen Corporation by which it had been pledged for a loan. The funds to be used for the payment of the necessary debts of the corporation and the expenses of the receivership were not received from this source however, but from a loan which was obtained for the corporation by the brokerage firm of Amos Treat and Company.

The plan which provides for obtaining the money in this manner was the result of many conferences, both in New York and Wilmington, in practically all of which Mr. Golin took part.

I am convinced from an examination of the record that these conferences above referred to, played a leading part in the ultimate agreement of the interested parties to bring about the discharge of the receiver by the plan adopted.

The principles controlling the right to compensation in cases of this character are well established in this State. A receiver having been appointed by the court to assist it in the administration of an estate, is an officer of the court; both he and his attorney are entitled to be paid for their service and their actual expenses incurred in connection therewith. Other persons than receivers, including stockholders, by whom funds are created for the benefit of the estate, or existing funds are preserved, are entitled to be reimbursed out of the fund for the amount paid out by them as costs and expenses including their

attorneys' fees. But stockholders of a corporation for which a receiver has been appointed, who became active in the affairs of the receivership, are not entitled to compensation therefor as a matter of course. If such were the rule many estates might be dissipated.

*Pennington v. Commonwealth Hotel Construction Corp.,* 18 *Del.Ch.* 238, 158 *A.* 140; *McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Co.,* 21 *Del.Ch.* 308, 190 *A.* 569; *In the Matter of Perrine, et al., v. Pennroad Corporation, et al.,* 30 *Del. Ch.* 517, 64 *A.* 2d 412.

The principle is also well settled, that where a receiver has been appointed who is represented by competent counsel, there is no necessity for others to assist in the administration of the estate. If other persons, including counsel, do take part in the affairs of the estate, they must look to those by whom they are employed for compensation; unless their services are of very material assistance in creating or preserving funds for the estate. *McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Co.,* 21 *Del.Ch.* 308, 190 *A.* 569; *In re Paramount-Publix Corp., (D.C.),* 12 *F. Supp.* 823, 825, 827; *In re New York Investors, (2 Cir.)* 79 *F. 2d* 182.

It seems clear that the major service rendered by any one in this case, was in preserving the assets of the corporation until the stock which it owned became more valuable and it was possible to borrow money for the purpose of settling its financial difficulties without a sale.

More than one attempt was made to have the assets sold in order to wind up the affairs of the receivership and secure the discharge of the receiver. The fact that this was not done made it possible to take the course which was finally taken.

The many conferences which were held were largely responsible for keeping the assets intact and for the plan

which was finally agreed upon to settle the affairs of the corporation.

Mr. Golin took an active part in all of these conferences except the last one. The record shows that his efforts were very helpful in the preservation of the assets of the corporation, and the agreement upon the plan for the settlement of its affairs.

The preponderance of the testimony introduced at the hearing before the Chancellor, establishes that Mr. Golin took a major part in the preservation of the assets of Public Service Holding Corporation, and the conferences which led to the adoption of the plan by which its debts were paid and the receiver discharged, with the exception of the method finally agreed upon for raising the money.

For these reasons, I think that an allowance should be made for his services from the fund in the hands of the receiver. I cannot agree with the opinion of the majority of the court.