Oscar L. ALTMAN et al., Appellants,

v.

CENTRAL OF GEORGIA RAILWAY
COMPANY et al.

No. 75–1081.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 15, 1975.

Decided July 7, 1976.

Victor A. Altman, Washington, D. C., for appellants.

Charles A. Horsky, Washington, D. C., for appellees.

Before BAZELON, Chief Judge, Mr. Justice CLARK,* of the Supreme Court of the United States, and MacKINNON, Circuit Judge.

Opinion for the court filed by Circuit Judge MacKINNON.

Concurring opinion filed by Chief Judge BAZELON.

MacKINNON, Circuit Judge:

Plaintiff stockholders sued to compel payment of dividends. During the litigation Central merged with another railroad. The suit was finally terminated by this Court under the doctrine of *Schwabacher v. United States,* 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305ʹ (1948), that the suit did not survive the corporate merger, but in our opinion we expressly reserved the issue of whether plaintiffs are entitled to attorney's fees for having caused a payment of dividends made on 1968 income. *Altman v. Central of Georgia Ry. Co.,* 159 U.S.App. D.C. 402, 407 n. 8, 488 F.2d 1302, 1307 n. 8 (1973). Plaintiffs-appellants now appeal from a Memorandum and Order of the district court dated December 2, 1974 which

---

* Mr. Justice Tom Clark, United States Supreme Court, Retired, sitting by designation pursuant to 28 U.S.C. § 294(a).

denied plaintiffs' motion for attorney's fees. The issue in this appeal is whether appellant stockholders caused the Central of Georgia to declare a dividend on the railroad's 1968 income.

With no analysis or further explanation the trial court's opinion declares:

> The fact that defendant declared a dividend during the pendency of plaintiffs' first Motion for Summary Judgment is at best coincidental and fully explained in defendant's favor by the evidence of record.

J.A. 27.

On analysis of the record here, and particularly of the moving papers underlying the trial court's opinion (R. 111, 112, & 113), it is apparent that the appellant's suit did cause the dividend.

Prior to April 22, 1969 the railroad's intent clearly was not to declare a dividend. The 1968 annual report had been issued without mention of a dividend for that year's income (R. 67).[1] It is uncontested that the established practice of the railroad was to announce dividends on a calendar year's income in the annual report for that calendar year (Appellant Br. 9, Appellee Br. 7, Reply Br. 6). Dividends had not been paid since 1960 (Minutes at R. 68). In an affidavit of March 3, 1969, filed in this suit, the General Auditor of Central (and Southern) affirmed that the dividends had been foregone because of the capital needs of the Central of Georgia:

> This means that the actual amount expended on Central's physical properties from 1963–1967 totaled $133,024,000. But even such vast expenditures have not completely met the requirements of Central in the opinion of the company's officials, and further large expenditures are needed.

Dewey Affidavit, R. 62 at 6. Most importantly, the Central of Georgia, as indicated by their Annual Report of December 31, 1968, had notice by December 31 of the tax adjustment based on Central's tax loss that was used for the dividend (1968 Annual Report, R. 67, at 7, "Federal income taxes" reduction of $2,201,000; *id.* at 9, Note 2; Minutes at R. 68). It undoubtedly also knew of this before December 31, 1968.

As of April 22, 1969 no dividend had been declared for 1968 (R. 66). The railroad's annual report for 1968 had already been issued (R. 66). On April 22, 1969 appellants filed a memorandum with the district court pointing out that the firm had available three times the funds necessary for the contested dividend (R. 66). Appellee responded instantly, stating that the dividend question would be considered on May 2, 1969 (R. 67). On May 9 appellee notified the court that the dividend would be paid (R. 66). The sole source of the dividend was the tax adjustment (Minutes at R. 68) (also affirmed by both sides at oral argument) which had been known to Central management for some time and identified by appellants in appellants' April 22, 1969 memorandum (R. 66 at Exhibit C).

Central's opposition in the fees hearing neither resolves nor addresses the foregoing evidence (R. 112). Given the showing made by appellants, Central was obligated to meet these points or to see appellants prevail, but Central has failed to do so.

■ It thus clearly appears that the railroad reversed their position when appellants filed their April 22, 1969 affidavit and the obvious inference therefrom is that the affidavit *caused* the railroad to reverse its position. No other explanation appears in the record, when the railroad knew for a long time that it was going to have the available income, and yet specifically filed documents as late as March 3, 1969 indicating that it would refuse to declare a dividend. *See* Statement of Charles A. Horsky (March 3, 1969), affidavit of Earle F. Bidez, former Executive Vice President of Central, (February 26, 1969), John H. Dewey, General Auditor of all companies in the Southern Railway System, including Central (March 3, 1969). (R. 62). It is thus plain that the contrary holding of the district court is clearly erroneous. *Case v.*

---

1. Appellant received his copy of the annual report on April 18, 1969 (R. 66).

*Morrisette,* 155 U.S.App.D.C. 31, 475 F.2d 1300 (1973).

■ Another aspect of the trial court opinion is also troubling. The court apparently relies in part on denials of the shareholder's motions for summary judgment (J.A. 27). But the merits have never been tried. The railroad got out of the suit by merging and mooting the issue under the doctrine of *Schwabacher, supra.*

With the record in this state we conclude that appellants by their action and demand caused the dividend to be declared. That issue is accordingly finally decided against Central, the contrary finding by the trial court is reversed, and the case is remanded to the district court solely for the purpose of setting the attorney's fees.

*Judgment accordingly.*

BAZELON, Chief Judge (concurring):

I join the court's opinion, and write separately only to call attention to a problem to be confronted on remand.

An important factor in fixing an attorney's fee is the quantum of benefit conferred on the stockholders.[1] The able trial judge has already expressed his view that the benefit here was nonexistent, since the dividend was merely "coincidental." Although we reverse that finding as not supported by the record, the expressed belief that this lawsuit did not aid the stockholders may well give the appearance, if not the reality, of influencing the exercise of discretion in fixing a fee.[2] Accordingly, the trial judge would be well advised to consider transferring the matter to another judge. *See United States v. Parker,* 447 F.2d 826, 829 n. 4 (7 Cir. 1971) (Stevens, J.).

Some courts, by rule or practice, have wisely sought to remove any possible unintended connotations of personal criticism by making such transfers more or less routine.[3]

1. *See Ratner v. Bakery & Confectionary Workers,* 122 U.S.App.D.C. 372, 354 F.2d 504, 506 (1965); *Evans v. Sheraton Park Hotel,* 164 U.S.App.D.C. 86, 503 F.2d 177, 185–87 (1974); *cf. Treves v. Servel, Inc.,* 38 Del.Ch. 483, 154 A.2d 188 (1959) ("nominal" fee proper where suit merely caused "slight speeding up" of dividends).

2. The "appearance of justice" rule applies even though the trial judge has "no actual bias and

. . . would do [his] very best to weigh the scales of justice equally between contending parties." *See In re Murchinson,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11, 13 (1954).

3. *See* Seventh Circuit Local Rule 23, 28 U.S.C.A. *See also United States v. Bryan,* 393 F.2d 90 (2 Cir. 1968).