Samuel C. WOLFENSOHN and Esther Buchman, in their own behalf and in behalf of all other holders of Certificates Constituting a Charge on Income, and all other holders of 5½ percent Subordinated Income Debentures, due January I, 2033, of the Missouri-Kansas-Texas Railroad similarly situated, Plaintiffs,

v.

MADISON FUND, INC.; Axe-Houghton Fund A, Inc.; Axe-Houghton Fund B, Inc.; Axe-Houghton Stock Fund, Inc.; Axe Science Corp.; Bangor Punta Operations, Inc.; Missouri-Kansas-Texas Railroad Company and Katy Industries, Inc., Defendants.

Court of Chancery of Delaware.

New Castle.

Oct. 4, 1968.

H. Albert Young and H. James Conaway, Jr., of Young, Conaway, Stargatt & Taylor, Wilmington, and Irwin M. Taylor, of Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiffs.

S. Samuel Arsht and David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for defendants Madison Fund, Inc., Missouri K. & T. R. Co., and Katy Industries, Inc.

Louis J. Finger, of Richards, Layton & Finger, Wilmington, for defendant Bangor Punta Operations, Inc.

Hugh Corroon, of Potter, Anderson & Corroon, Wilmington, for defendants Axe-Houghton Fund A, Inc., Axe-Houghton Fund B, Inc., Axe Science Corp., and Axe-Houghton Stock Fund, Inc.

MARVEL, Vice Chancellor.

Plaintiffs bring this suit on behalf of themselves and all other holders of two classes of securities of the Missouri-Kansas-Texas Railroad Company, one class consisting of registered non-interest bearing certificates, dated January 1, 1958, which securities constitute a charge on corporate income, and the other an issue of 5½% subordinated income debentures due January 1, 2033. As of the time of the filing of their complaint plaintiffs claimed to be the owners of 18,900 so-called income certificates, representing a total charge on income of $1,890,000, as well as to be the owners of $660,000 of 5½% subordinated debentures. The certificates were issued with stipulated priority over the common stock of the Railroad in the event of bankruptcy or liquidation, while the claims and interests represented by the debentures were in the event of such happenings expressly subordinated to the claims and interests of all senior indebtedness of the Railroad.

The litigation at bar arises out of the consequences of an offer made by the defendant [1] Katy Industries to take shares of common stock of the Railroad in exchange for its own shares on a share for share basis. Plaintiffs, while having participated in such exchange as common stockholders, complain that such exchange has diminished their rights as certificate and debenture holders. Significantly, notwithstanding plaintiffs' participation in the exchange, which became effective on March 11, 1968, their suit was not filed until May 28, 1968.

Such exchange plan, before its submission to the Railroad's stockholders, was presented to the Interstate Commerce Commission under a so-called 5(2) application which after considering the matter and concluding that while—

"The proposed transactions will have no direct effect on Katy's (The Railroad's) operations, railway employees, or transportation service to the public, since Katy and its subsidiaries will continue to operate in the same manner as at present. However, the indirect benefits of additional funds for rehabilitation and modernization will accrue to Katy and the applicants believe that it will be in a better position to continue and improve its transportation service * * *"

ruled that

"* * * the proposed transactions do not require our approval * * *".

An application to exempt the proposed transactions from certain provisions of the Investment Company Act of 1940 was also filed with the Securities Exchange Commission which found that the proposed transaction was fair and reasonable insofar as the interests of the involved defendant registered investment companies were concerned. Neither of these rulings, while persuasive, is controlling here.

By March 11, 1968, 80% of the railroads' stockholders had exchanged their stock, and upon expiration of the extended offer date on May 31, 1968, 97% of the Railroads' stock had been acquired by Katy Industries. The offer was contingent on the depositing of not less than 80% of the Railroad's stock, the amount required for filing a consolidated tax return.

What is now known as the Missouri-Kansas-Texas Railroad and its subsidiaries have run a railroad freight business through various subsidiaries in the states of Missouri, Kansas, Oklahoma and Texas for almost a hundred years, the recent operations thereof having been for the most part unprofitable. Its properties are heavily mortgaged, the total lien of such indebtedness now being close to one billion

1. This corporation was admittedly formed for the purpose of becoming Missouri-Kansas-Texas Railroad's parent with authority to acquire non-railroad businesses in the hope of extracting the Railroad from its financial slough.

dollars, and no dividends have been paid on the railroad's common stock since 1930. In the face of this gloomy picture, strenuous efforts have been made recently to improve the Railroad's physical properties following certain alterations in the corporation's financial structure which had led to the issuance of plaintiffs' certificates and debentures here sued upon pursuant to a 1957 preferred stock modification plan. As of December 31, 1956, arrearages on the Railroad's fully cumulative preferred stock had reached a total of $159 per share, constituting a severe handicap to the Railroad's efforts successfully to compete with other railroads and truck firms doing business in the area served by the Railroad. Accordingly, the Interstate Commerce Commission was asked to approve in the public interest a plan under the terms of which the Railroad's preferred stockholders would be given a chance to share along with the common stockholders in prospective corporate growth, while, at the same time the common stockholders' equity would be freed from the stultifying burden of the preferred stock arrearages. Such plan having been approved by the Commission and acted upon by the requisite number of preferred stockholders, an order was entered altering the 667,005 shares of outstanding preferred stock into a like number of shares of Railroad's common stock and providing that each new holder of such common stock would also receive one 5½% subordinated debenture as well as one income certificate along with each share of common. As a result, the old preferred stockholders acquired 45% of the Railroad's common stock. Notwithstanding the elimination of the massive preferred dividend arrearages, however, the Railroad continued to sustain annual losses (before extraordinary items) except for the years 1961 and 1962. As of December 31, 1967, according to the complaint, the consolidated operating loss carry forward of the Railroad exceeded $24,000,000 [2]. In the meantime, defendants, other than the Railroad

and Katy Industries, had acquired a substantial number of shares of the Railroad's common stock. As of December 31, 1967, 545,410 such shares were held by such registered investment companies.

The certificates held by plaintiffs and those of their class, while dated January 1, 1957, bear no maturity date, nor do they carry a fixed rate of interest. However, upon their issuance, the Railroad obligated itself to pay annually into a non-cumulative sinking fund to be used for the redemption of such certificates, twenty percent of available income, a term defined as income realized after deducting the amounts required for meeting the Railroad's fixed charges, such income having first to be applied to capital improvements up to $2,000,000 annually, next to contingent sinking funds for prior debt, and thirdly to payments on the debentures. Nothing to date has been paid on debenture interest or into the debenture retirement fund, and no such payments can reasonably hope to be made until the present large accumulated deficit in available income has been eliminated. As of December 31, 1966, such deficit approximated $26,000,000. On December 31, 1967, it exceeded $33,000,000. In similar fashion the indenture under which the 5½% debentures were issued provided for safeguards for the payment of moneys into a sinking fund as long as any debentures remain unredeemed and outstanding, and nothing to date has been paid in interest or into the sinking fund.

Notwithstanding the fact that provisions made in the Railroad's undertakings for the retirement of certificates and debentures before any income could be paid to common stockholders, as well as for the preservation of the rights of certificate and debenture holders over the rights of corporate stockholders in the event of bankruptcy, and the fact that provisions made for the assumption of the Railroad's obligations towards certificate and debenture holders by the resulting corporation in the

---

2. This loss figure was actually some $31,000,000 as of the time in question.

event of merger, remain unchanged, plaintiffs claim that by causing Katy Industries to be created and by inviting the Railroad's common stockholders to exchange their stock for shares of Katy Industries, the rights of all holders of both the Railroad's certificates and 5½% debentures have been diminished.

The relief sought by plaintiffs is an order to the effect that the exchange of Railroad stock for stock of Katy Industries is void on the ground that such transaction has caused an improper corporate reorganization, or, in the alternative, that the contractual obligations of the Railroad towards certificate and debenture holders be deemed to have been assumed by Katy Industries. Finally, plaintiffs ask that Katy Industries be enjoined from paying any dividends to its stockholders or from utilizing the Railroad's tax loss carry over unless the income of both Industries and Railroad is first applied to the obligations of the Railroad.

The Railroad as well as the defendants Madison Fund, Inc., Katy Industries, Inc., and Bangor Punta Operations, Inc. have moved for summary judgment of dismissal of the complaint. There being no material factual differences on the record, this is the opinion of the Court on the legal merits of such motions. If such motions are granted, there can be no case against the other participating investment company defendants.

After the defendant Madison Fund and others had acquired a substantial number of Railroad shares, steps were taken to try and bring new money into the operation of the Railroad. In 1966, cash in the amount of $3,258,300 was furnished by Madison Fund through the purchase of collateralized convertible bonds. In 1967, these bonds were converted into common stock, thus releasing collateral. However, cash remained a problem. Negotiations

with Mrs. Axe, who had a substantial investment in the Railroad through the Axe corporate defendants, and certain interested foreign bankers proved ineffectual. Next, it being certain that Interstate Commerce Commission[3] regulations stood in the way of the acquisition of non-railroad businesses by the Railroad or by any of its existing subsidiaries, which such acquisitions, it was hoped, would open the way to developing desperately needed non-railroad income, it was decided to form the defendant Katy Industries to function as a non-transportation holding company, a device which has been employed by other financially distressed railroads in recent years.

This plan was implemented by bringing the defendant Bangor Punta, a corporation skilled in diversification programs into the picture upon such corporation's acquisition of 88,875 of Railroad's shares of stock. Thereupon, Madison Fund, Bangor Punta, and the Axe corporate defendants, all large Railroad stockholders, proceeded to put the exchange plan into force and effect after full disclosure of its workings to the Interstate Commerce Commission and the Securities Exchange Commission. Two requests were also addressed to the Internal Revenue Service, one for a ruling that the contemplated exchange would result in no adverse consequences to the stockholders of Railroad, and second, assuming the effectiveness of the exchange, a ruling that Industries would be entitled to file a consolidated tax return with Railroad and its subsidiaries. Favorable rulings as to such tax consequences followed.

There would seem to be no doubt but that the existence of a net operating loss carry over on the part of the Railroad, which approached $31,000,000, as of December 31, 1967, and the apparent absolute necessity of engaging in non-railroad operations led to the adoption of the so-called reorganization which plaintiffs at-

---

3. No cash was, of course, available for the acquisition of such properties, and the Interstate Commerce Commission forbids a railroad to acquire non-railroad properties for stock or by otherwise obligating its credit.

tack. However, the question posed is not the merits of the business judgment involved, but whether or not plaintiffs' rights have been improperly affected by effectuation of the plan.

Plaintiffs' case is premised on the theory that the consummated exchange plan is in fact a corporate reorganization designed to permit the Railroad's old common stockholders to become the recipients of non-transportation income at the expense of the holders of certificates and 5½% debentures, by depriving the latter of the security such type of income would assure them in the event of bankruptcy or liquidation. It is further contended that the exchange has undermined the position granted certificate and debenture holders in the 1958 corporate restructuring and relegated them to a subordinate position. Next, it is charged that Industries has appropriated the Railroad's tax loss carry-over for the benefit of its stockholders. Finally, it is contended that the exchange has distracted management from the affairs of the Railroad, and made the latter captive. Implicit in plaintiffs' contentions is the asserted theory that the securities they own and represent are of the nature of corporate stock which has been ignored in a corporate reorganization. However, a reading of the documents which provided the basis for the issuance of the certificates and debentures here involved satisfies me that such obligations create a debtor-creditor relationship in which no equivocation can be read in as in the case of Moore v. American Finance & Securities Co., 31 Del. Ch. 335, 73 A.2d 47. Furthermore, the cited case was concerned with distribution rights in an equity receivership.

First of all, while the exchange prospectus of January 29, 1968 characterized the proposed offer as one " * * * being made in connection with a plan for the reorganization of the Railroad * * * ", I am satisfied that the cases relied on by plaintiffs having to do with court-administered corporate reorganizations are not in point, this being a case concerned with an exchange of stock in which a prospectus was required by the Security and Exchange Commission. By analogy the selling of authorized but unissued stock is not a reorganization, Re Public Service Holding Corp., 26 Del.Ch. 436, 24 A.2d 584. See also 19 Am.Jur.2nd, Corporations § 1515. In fact, plaintiffs appear to concede on page sixteen of their brief that there is nothing in the wording of the debentures or certificates here in issue to prevent the Railroad's common stockholders from selling their stock to a single corporation. Next, while it is conceded that all of the executive officers of Industries, except John W. Barriger, have been actively engaged in the business of the Railroad in the five years preceding January, 1968, and there would thus appear no doubt but that Industries, the holder of 97% of the Railroad's common stock, owes a fiduciary duty to the Railroad, plaintiffs can not point to any provision of the exchange plan here under attack which changes the contractual rights of either certificate or debenture holders. They remain as before.

Seeking to overcome this situation, plaintiffs would have the Court disregard the separate entities of the Railroad and Industries and to ipso facto elevate the rights of certificate and debenture holders over those of the stockholders of Industries. In other words, there being no true corporate reorganization here involved in which the rights of plaintiffs and those of their class have been flaunted, plaintiffs are reduced to making general charges to the effect that as a result of the exchange, non-railroad income which might otherwise have inured to the benefit of certificate and debenture holders will now inevitably go to the stockholders of Industries.

Plaintiffs, however, can not point to any violation of Delaware's statutory or substantive law resulting from the exchange. Some fear of a threat of possible future injury to the securities represented by plaintiffs is obviously not actionable now. And any theory of corporate opportunity is clearly inapposite.

In short, where a corporate act is carried out in compliance with applicable law without causing any legally definable injury to the rights of others, such action must be judged as an independent and distinct transaction. See Hariton v. Arco Electronics, Inc., 41 Del.Ch. 74, 188 A.2d 123, and Federal United Corporation v. Havender, 24 Del.Ch. 318, 11 A.2d 331.

Similarly, any claim of appropriation of the Railroad's tax loss carry over by Industries is without legal merit in the absence of "gross and palpable overreaching", Meyerson v. El Paso Natural Gas Company (Del.Ch.) 246 A.2d 789. No such showing is made here. Compare Western Pacific R. R. Corp. v. Western Pacific R. Co. (Dist.Ct.N.D.Cal.) 85 F.Supp. 868, aff'd (CA9) 197 F.2d 994, and 206 F.2d 495.[4]

In conclusion, plaintiffs' fears as to how new income which may possibly be derived from the operation of non-railroad properties by Industries may be employed are pure surmise. A reading of the moving papers before me satisfies me that the purpose of the exchange is to diversify and thus explore new means of providing needed moneys for the Railroad rather than to discriminate against what is, as of now, apparently Industries' only asset of any substance, namely the Railroad. If and when plaintiffs can effectively demonstrate actual injury or an imminent threat of injury to their rights, they may take appropriate action. The Court has considered plaintiffs' other contentions, including those concerning a claimed distraction of Railroad employees in connection with the exchange, and finds them without merit.

In view of the conclusions here reached, it is unnecessary to consider the moving parties' contentions as to their defense of laches. The moving defendants' motion for summary judgment will be granted.

Order on notice.

---

4. See also 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986.