RUDE *v.* BUCHHALTER.

No. 736. Argued April 28, 1932.—Decided May 23, 1932.

*Mr. Ernest Morris,* with whom *Mr. Cass E. Herrington* was on the brief, for petitioner.

454

*Mr. Henry E. Lutz* for respondent.

Mr. Justice Butler delivered the opinion of the Court.

This suit was brought in the federal court for Colorado by petitioner against respondent, the First National Bank of Denver, and the members of a law firm to obtain judgment against respondent on an oral promise to pay a large sum and to establish and foreclose a lien therefor upon certain bonds and cash held by the bank in escrow. The principal controversy was between petitioner and respondent. The bank claimed a lien on the fund to secure payment of a small sum owing to it by respondent. The lawyers asserted a claim under an attachment to enforce payment of an amount to be fixed as their compensation for services in a proceeding in the state court. After trial at which much evidence was heard the court dismissed the complaint on the merits. Respondent appealed and petitioner took a cross appeal. On respondent's appeal the Circuit Court of Appeals remanded with

instructions for further proceedings in the district court, and on petitioner's appeal affirmed. 54 F. (2d) 834.

This writ brings here for review the part of the decree directing the district court to deduct from petitioner's share of the fund in escrow the expenses, including reasonable attorneys' fees to be fixed by the district court, to which respondent and the bank have been put in this litigation.

The evidence and findings disclose facts, occurring before those alleged in petitioner's complaint, that shed light upon the question presented. In June, 1929, at a state court receiver's sale he and one Bronstine each bought an undivided half of the property of the Colorado Pulp and Paper Company. The purchase price was paid in cash and in bonds of that company. Under an agreement between petitioner and respondent the former furnished $61,000 and the latter $53,922, making the total required to pay for the half interest bought by petitioner. It was transferred to petitioner and later a quarter interest was conveyed by him to respondent. Possession of the property was given to Bronstine who carried on the business for account of all concerned. Petitioner and respondent wanted to sell their interest and, in order to force Bronstine to buy them out, they pursued a course of hostile and threatening criticism of his management. And when a partition suit by Bronstine seemed imminent they, conspiring to embarrass and delay him should he seek relief by that means, falsely made it to appear of record that a quarter interest in the property was subject to a heavy incumbrance. For that purpose they caused to be made and recorded a deed transferring petitioner's quarter interest to respondent and also a trust deed to the public trustee purporting to secure a note made by respondent to petitioner for $67,500. Respondent soon succeeded in selling the half interest to one Binstock, an associate of Bronstine, for $28,080 in cash and $92,500 in

bonds of the Colorado Paper Products Company. Petitioner, as a condition of clearing the title of record, required that all the cash and bonds should be delivered to the bank to be held in escrow until he and respondent should agree in writing as to the disposition of the same. They promptly divided nearly all of the cash, but came to no agreement for division of the remaining money or the bonds.

Later, petitioner brought this suit claiming that the fictitious note and trust deed were valid and alleging that, when the cash was divided, respondent promised to pay him the full amount of the note and $7,500 out of the profits of the venture and that the bonds should be held in escrow until the balance alleged to be owing, $59,699.61, should be paid. And the complaint alleges that the lawyers had attached the interest of petitioner and respondent and claimed a prior lien on the fund. The prayer is that petitioner have judgment against respondent for the amount claimed; that the same be declared a lien upon the fund, and that the bank sell the bonds and apply the fund to the payment of the judgment. Respondent's answer alleges that the note and trust deed were fictitious, denies the alleged promise, avers that he and petitioner had approximately equal interest in the property and that the only agreement between them was that the sale of their half interest be joint and entire and the proceeds be equally divided between them, and prays that the complaint be dismissed on the merits. The lawyers' answer asserts that they have a lien upon the fund, denies that petitioner has any, and prays that he be denied relief. The bank's answer shows that the cash and bonds were deposited with it to be held in escrow until petitioner and respondent agree in writing as to the disposition of the same, sets forth the division of the cash, alleges that respondent assigned his interest in the fund to the bank as security for the payment of $1,250 ·

and prays that it be declared to have a first lien on the fund, be instructed as to disposition of the balance and have costs and attorneys' fees incurred in this suit.

After hearing the evidence and before making findings under Equity Rule 70½, the district court filed a memorandum showing that petitioner had failed to make out his case. Then respondent submitted requests for findings of fact and, in addition to those negativing petitioner's cause of action, asked the court to find that petitioner and he entered into a campaign against Bronstine, including the making of the fictitious note and trust deed, to create difficulties and to force Bronstine to buy their interest in the property; that, by making the note the basis of his suit, petitioner attempted to perpetrate a fraud against respondent and to impose upon the court; and that petitioner's testimony is unworthy of belief. And respondent proposed as conclusions of law that petitioner by reason of the campaign against Bronstine did not come into court with clean hands, and that the bank should be directed to deliver the entire fund to respondent subject to its lien and the claim of the lawyers. The court, refusing to adopt any such condemnatory requests, made findings merely showing the respective amounts invested in the property by petitioner and respondent; that the fictitious note had been canceled; that pursuant to agreement the proceeds of the sale were to be held by the bank in escrow until respondent and petitioner agreed in writing as to the disposition of the same; that cash had been divided and that the escrow agreement had not been modified. As its conclusion of law the court declared that the complaint should be dismissed on the merits as to all defendants with costs to be taxed against petitioner, and entered its decree accordingly.

On his appeal respondent prayed not for reversal of any part of the decree but that it be made to declare that as against petitioner he was the owner of the fund and

to direct the bank to deliver it to him. The opinion of the court clearly shows that claim to be devoid of merit. Petitioner on his cross appeal merely prayed for the relief sought in his complaint.· The decree was affirmed and that ruling is not questioned here. In his brief in that court, petitioner suggested that, if it held his suit was rightly dismissed below, it should direct distribution under the agreement.

First to be considered is the command of the Circuit Court of Appeals that the district court deduct from petitioner's share the " court costs and expenses to which Buchhalter " has " been put in this litigation including reasonable attorneys' fees to be determined by the trial court."

This is not a taxation of costs as between solicitor and client. Cf. *Guardian Trust Co.* v. *Kansas City Southern Ry. Co.*, 28 F. (2d) 233; 281 U. S. 1. The only costs allowed to be included in the money judgment against petitioner are those taxable as between party and party; counsel fees or other expenses not so taxable are not to be included. The Circuit Court of Appeals found that, by reason of petitioner's wrongful and fraudulent demands and bad faith in bringing and maintaining this suit, he prevented the distribution of the fund according to the escrow agreement and put respondent and the bank to the expense of making their defense against a groundless claim. It concluded that, because of such inequitable conduct, the decree should impose upon petitioner's share a lien in favor of respondent and the bank for the expenses to which they were so put.

It is significant that the trial court, though specifically requested by respondent so to do, declined to find that petitioner in bringing this suit attempted to perpetrate a fraud against respondent or to impose upon the court or that he came with unclean hands or must have known that the cause of action he alleged was without founda-

tion in fact. Such refusal strongly suggests that the trial court who saw and heard these antagonists upon the witness stand was of opinion that no such condemnation was warranted by the evidence. Its findings appear to have been diligently restrained to those merely sufficient to show that petitioner failed to sustain the essential allegations of his complaint. Indeed, one of respondent's requests for findings reflects unwillingness on the part of petitioner to accept other than cash for his share and that there were reasons, other than matters of mere accounting, for the agreement that the cash and bonds should be held in escrow until petitioner and respondent " have agreed in writing concerning the disposition of the proceeds."

The Circuit Court of Appeals went beyond the issues presented by the record. Its opinion shows that determination of the appeals did not require findings as to the good faith of petitioner. Respondent, claiming the entire fund, necessarily opposed distribution under the agreement. A large part of the work of his attorneys is chargeable to the attempt to enforce his groundless claim to the entire fund. He made no application for a lien upon petitioner's share on account of expenses or attorneys' fees. Such allowances are not made as of course. And petitioner had no reason to apprehend that any such matter would be considered on either appeal. He had no opportunity to be heard in respect of the authority of the court to make such an allowance or as to the facts touching the propriety or basis of the same. Petition for rehearing and denial, as here, upon a reasoned opinion may not in such a matter fairly be regarded as the equivalent of a hearing in advance of decision.

The opinion below condemns the conduct of both parties in various details of the transaction out of which this litigation arose. The record discloses that when acting together in the pursuit of gain they were not governed by

proper standards and that where their interests came in conflict they disregarded considerations making for fair play. Nice distinctions as to which disclosed the greater lack of good faith are not sufficient to warrant a court of equity in putting upon one any part of the expenses incurred by the other in waging such a contest. Assuming that the matter was properly before the court for consideration, we are of opinion that the record does not warrant any such allowance in favor of respondent.

The bank is not entitled as against petitioner to any allowance on account of expenses or counsel fees incurred to protect its claim against the fund to secure the debt owing by respondent to it. But under settled principles applied in equity courts its reasonable expenses including a fair amount to pay the fees of its attorneys incurred in this suit and which are attributable to the discharge of its duty under the escrow agreement properly may be made a first charge against the fund as a whole. *United States* v. *Equitable Trust Co.,* 283 U. S. 738, 744. The decree will be modified in accordance with this opinion, and the costs in this Court will be taxed against respondent.

*Modified, and as modified affirmed.*