18037

STEPHENSON FINANCE COMPANY, Inc., Respondent, v. SOUTH CAROLINA TAX COMMISSION, Appellant. STEPHENSON MOTOR COMPANY, Inc., Respondent, v. SOUTH CAROLINA TAX COMMISSION, Appellant. SUPERIOR AUTOMOBILE INSURANCE COMPANY, Respondent, v. SOUTH CAROLINA TAX COMMISSION, (PL-54), Appellant. SUPERIOR AUTOMOBILE INSURANCE COMPANY, Respondent, v. SOUTH CAROLINA TAX COMMISSION (INS-569), Appellant.

(130 S. E. (2d) 72)

*James M. Windham, Esq., Assistant Attorney General,* of Columbia, *for Appellant,*

*Messrs. Willcox, Hardee, Houck, Palmer & O'Farrell,* of Florence, *and Sinkler, Gibbs & Simons,* of Charleston, *for Respondents,*

March 12, 1963.

Brailsford, Justice.

These four actions to recover taxes assessed by the South Carolina Tax Commission and paid under protest were tried together in the court below and resulted in judgments in favor of the taxpayers. The Tax Commission has appealed on one record. All parties agree that each of the four appeals depends upon the same legal question, *i. e.*, whether the 1957 acquisition by Stephenson Finance Company, Inc. of all of the capital stock of Superior Life Insurance Company and of Superior Automobile Insurance Company by an exchange of shares of its own stock amounted to a reorganization, consolidation or merger within the meaning of certain tax statutes.

Stephenson Finance Company, Inc. is a South Carolina corporation engaged in the automobile finance and small loan business. Superior Life Insurance Company is a South Carolina corporation engaged in the business of writing credit life insurance. Such insurance is required of most borrowers from Stephenson Finance Company. Superior Automobile Insurance Company is a South Carolina corporation engaged in the business of writing physical damage insurance on automobiles. Such insurance is required of those who finance automobiles with Stephenson Finance Company. Prior to 1957 most of the insurance business engendered by the activity of the finance company was channeled to Superior Life and Superior Automobile insurance companies. In 1957 the finance company resolved to acquire ownership of the insurance companies so that its stockholders might profit from the insurance requirements of its borrowers. It accomplished this purpose by exchanging its own stock for that of the stockholders in the insurance companies on a book value basis. No corporate action was required of the insurance companies. The exchange of stock was between the individual shareholders and the finance company. Each of the three corporations retained its corporate existence, assets and liabilities

and each continued to conduct the business authorized by its charter.

We now refer briefly to the facts of the case in which Stephenson Motor Company, Inc. is respondent. It will not be necessary to state those involved in the other cases, because it is conceded that all four appeals rest on the same legal bottom.

The respondent owned 50% of the capital stock of Superior Automobile Insurance Company—5,000 shares with a cost basis to it of $62,500.00. It exchanged this stock for 17,950 shares of Stephenson Finance Company stock having a market value of $159,396.00 and reported no gain on the transaction. Invoking Sec. 65-273, Code of Laws 1952, the Tax Commission assessed an additional income tax based on a gain of $96,896.00. We quote this section:

"When property is exchanged, * * * the gain or loss shall be the difference between the cost, * * * of the property exchanged and the value of the property received, whether bonds, stocks, securities or other tangible or intangible property."

It must be conceded that the exchange resulted in a taxable gain unless it fell within the exception granted by Sec. 65-275, which we quote:

"In a reorganization, consolidation or merger the exchange of stock or property for stock of a corporation a party to the reorganization, consolidation or merger shall not be deemed to result in gain or loss."

For a number of years the Internal Revenue Code has exempted gain or loss on an exchange of stock for stock in a corporate reorganization and has greatly expanded the exemption by defining the meaning of the term as used in the statute. By Act No. 647 of 1960, comprehensive amendments to the provisions of the South Carolina Income Tax Act relating to gain or loss on sales and exchanges of property were adopted, including the adoption of the definitions of corporate reorganization con-

tained in the Internal Revenue Code, Section 368. However, this appeal turns upon whether the South Carolina Tax Commission properly interpreted and applied the provisions of the 1952 Code which have been quoted. Its determination is entitled to most respectful consideration and should not be overruled without cogent reasons. *Roper v. South Carolina Tax Commission*, 231 S. C. 587, 99 S. E. (2d) 377.

As here, *Wilson v. South Carolina Tax Commission*, 220 S. C. 171, 66 S. E. (2d) 698, from which we quote, involved a transaction which would have been exempt under the Federal definitions.

"The State law, here applicable, is quite different because it contains no such definition of 'reorganization' as does the Federal; and we are confined to the ordinary meaning of the proviso to our Code sec. 2447 (Sec. 65-275, *supra*) quoted above and relied upon by appellants. * * * The fair and ordinary meaning of the word 'reorganization' cannot, we think, include the formation of a new, separate and distinct corporation, without impairment of the corporate existence or function of the old corporation."

To reorganize signifies the act or process of organizing again or anew. "Ordinarily it involves the creation of a new corporation to take over the assets and property and continue the business of the old one." Fletcher, Cyc. Corp. (Perm. Ed.) Sec. 7201. The term "is commonly applied to the formation of a new corporation by the creditors and shareholders of a corporation which is in financial difficulties, for the purpose of purchasing the company's works and other property, after the foreclosure of a mortgage or judicial sale." 19 C. J. S. Corporations § 1578.

Paraphrasing the above quotation from the *Wilson case,* the fair and ordinary meaning of the word *reorganization* cannot, we think, include the acquisition by one corporation of the capital stock of two others, without impairment of the corporate existence or functions of any of the three corporations.

It is settled law that corporations which are creatures of statute have no authority to consolidate or merge except as provided by statute. 19 C. J. S., Corporations, § 1605; 13 Am. Jur., Corporations, Sec. 1179; Fletcher, Cyc. Corp., Sec. 7048. Our statute on the subject at the time of these transactions was codified as Chapter 8 of Title 12, Code of 1952. Respondents contend that this statute applies to consolidations only and not to mergers. They concede noncompliance with the statutory requirements, hence no consolidation. However, they contend that these transactions are "readily classified as either a reorganization or merger."

The statute does not observe the technical distinction between consolidation and merger, which is thus stated by Fletcher, Cyc. Corp., Sec. 7041 :

"Taking up first the matter of consolidation, it should be observed that the term when accurately used, has a definite legal meaning. It is a combination by agreement between two or more corporations * * * and under authority of law, by which their rights, franchises, privileges and property are united, and become the rights, franchises, privileges and property of a single corporation, * * *. Strictly speaking, a consolidation signifies such a union as necessarily results in the creation of a new corporation, and the termination of the existence of the old ones. The corporation resulting from the consolidation is called the consolidated corporation, and the original corporations are called the consolidating or constituent corporations.

"The term 'merger' in connection with corporations has also a distinct meaning, although it is very often somewhat loosely used, and sometimes as denoting the same thing as consolidation. Like the latter, it is permissibly used to denote various arrangements by which two or more corporations become united in interest. Strictly speaking, a merger means the absorption of one corporation by another, which retains its name and corporate identity with the added capital, franchises and powers of the merged corporation. It is the uniting

of two or more corporations by the transfer of property to one of them, which continues in existence, the others being merged therein."

Turning now to the statute, the first section (12-451) provides that two or more corporations "may consolidate into a single corporation *which may be either one of said consolidated corporations or a new corporation to be formed by means of such consolidation."* The italicized language demonstrates that the statute authorizes the union of corporations by merger or consolidation, and that the words *may consolidate* were loosely used to encompass either process. The last section of the statute twice refers to a "consolidation or merger hereunder." We think it clear that the legislative intent was to authorize and regulate corporate mergers, as well as consolidations, and that neither can be lawfully accomplished without compliance with the terms of the statute. The interesting and strongly contested case of *Johnson v. Baldwin,* 221 S. C. 141, 69 S. E. (2d) 585, involved a merger which was accomplished under the statute and this court held that under the facts of the case the terms of the statute defeated plaintiff's claimed right to maintain the action.

Furthermore, without regard to noncompliance with statutory requirements, it seems clear that neither merger nor consolidation was intended or effected. The purpose of the finance company was to obtain the benefit of the insurance business generated by its activity in the small loan and automobile finance fields. This could be done only by acquiring the stock of the insurance companies and preserving them as distinct subsidiary corporations, each authorized to write a particular type of insurance. Consolidation or merger of the three corporations would have thwarted the entire plan.

A transfer of assets and assumption of liabilities are of the essence of corporate consolidation or merger. Neither is present here. The insurance companies retain their own assets and continue in the insurance busi-

ness, in which the finance company is not authorized to engage. There is no suggestion that the finance company has assumed the liabilities of the insurance companies.

The following quotation from the well-reasoned decision in *Fidanque v. American Maracaibo Co.,* 33 Del. Ch. 262, 92 A. (2d) 311, is in point:

"In this case Maracaibo acquired all the outstanding capital stock of the Case Pomeroy companies, issuing in exchange therefor its own stock. The agreement is between Maracaibo and the stockholders of Case Pomeroy. There is no provision for the liquidation or dissolution of Case Pomeroy. On the contrary, they are continuing to operate as independent units. * * *

"Whether a particular transaction is in reality a merger or otherwise depends to a great extent on the circumstances surrounding each particular case and in determining the question all the elements of the transaction must be considered. There is no magic in the words applied to the transaction. Calling it a merger does not necessarily make it so and giving it another name does not prevent it from being a merger. Fletcher, Cyc. Corp. (Perm. Ed.) Vol. 15, Sec. 7044, p. 20, n. 62. See *Vale v. Dupont,* 7 W. W. Harr. 254, 182 A. 668, 103 A. L. R. 946; *Metropolitan Edison Company v. Commissioner of Internal Revenue,* 3 Cir., 98 F. (2d) 807, 809. See also 19 C. J. S., Corporations, § 1604, p. 1367.

"It is well settled that ownership alone of the capital stock in one corporation by another does not create an identity of corporate interests between the two companies, or render the stockholding company the owner of the property of the other. *Owl Fumigating Corporation v. California Cyanide Co.,* D. C. Del., 24 F. (2d) 718."

See also 19 C. J. S., Corporations, § 1604, page 1366, footnote 12; cf. *Henry P. Moses Co. v. South Carolina Tax Commission,* 224 S. C. 193, 78 S. E. (2d) 187, and *Carolina, C. & O. Ry. of South Carolina v. South Carolina Tax Commission,* 197 S. C. 529, 15 S. E. (2d) 764.

Counsel for the respondents rely upon the principle that in determining the tax consequences of a transaction weight should be given to its substance rather than to its form. *Beard v. South Carolina Tax Commission,* 230 S. C. 357, 95 S. E. (2d) 628. Albeit, preservation of the separate identities, businesses and assets of the three corporations was of the substance of these transactions and essential to the purpose for which they were undertaken.

Respondents' further contention that the exchange of stock on a book value basis resulted in only paper profits is beside the point. The question is whether the ordinary tax consequences of such an exchange applied, or whether these exchanges were exempt because made in the course of a reorganization, consolidation or merger.

We think that the result of these transactions was the acquisition by Stephenson Finance Company of Superior Automobile Insurance Company and Superior Life Insurance Company as subsidiary corporations and that there was no reorganization, consolidation or merger; hence, there was no exemption from the ordinary tax consequences on an exchange of stock or other property. The authority of the finance company to acquire and hold the stock of the insurance companies has not been questioned by counsel or considered by us.

For the reasons stated, the four judgments appealed from are reversed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.