Oscar L. **ALTMAN** et al., Appellants,

v.

**CENTRAL OF GEORGIA RAILWAY COMPANY.**

No. 72–1153.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1973.

Decided Nov. 8, 1973.

---

62. The parties should be allowed to produce additional evidence as to said payments if they so desire.

Victor A. Altman, Washington, D. C., for appellants.

James Hamilton, Washington, D. C., with whom Charles A. Horsky, Washington, D. C., was on the brief, for appellee.

Before BAZELON, Chief Judge, and McGOWAN and MacKINNON, Circuit Judges.

McGOWAN, Circuit Judge:

In an action to compel the payment of dividends, the District Court, on cross-motions for summary judgment, ruled that the claim was no longer maintainable because of the supervening circumstance of an Interstate Commerce Commission order approving a corporate consolidation and, as an incident thereof, providing compensation, as required by the Interstate Commerce Act, for the just and reasonable value of the minority shares. The District Court purported to follow authoritative doctrine heretofore formulated by the Supreme Court in this precise statutory context. We think it was correct in doing so; and we affirm.

I

In 1965 plaintiffs Oscar and Victor Altman, assertedly acting for themselves individually and for a class of preferred stockholders of Central of Georgia Railway Company, complained in the District Court of the Company's failure to pay dividends on its preferred stock in certain years. Since Central's charter provided that dividends on the preferred stock were payable in respect of each year only from Available Net Income accruing in respect of such year, it was alleged alternatively that the directors of Central had (a) wrongly interpreted the charter definition of Available Net Income, and (b) spent excessive amounts on property acquisition and maintenance, in either instance with the effect of showing no Available Net Income for dividend purposes. After defendants had filed an answer denying these allegations, plaintiffs filed a motion for summary judgment. Plaintiffs attempted to appeal the District Court's denial of that motion, but the appeal was dismissed by this court (No. 23,332, November 12, 1969), and that ruling by the District Court is not now before us.[1]

In 1970 plaintiffs sought summary judgment in respect of the years 1964–65, 1967, and 1969, on the allegation that a 1964 revision of Central's by-laws required the payment of preferred dividends from earned surplus. Central asserted in opposition that the by-law was invalid as in conflict with the charter; and that, in any event, there were questions of fact which must be resolved before the directors could be found to have abused the discretion vested in them to

---

1. This litigation had been before us earlier on a successful appeal from a District Court dismissal on the ground of *forum non conveniens.* Altman v. Central of Georgia Railway Company, 124 U.S.App.D.C. 155, 363 F.2d 284 (1966), cert. denied, 385 U.S. 920, 87 S.Ct. 231, 17 L.Ed.2d 144 (1966).

manage Central's affairs, including determination of the levels of capital and maintenance expenditures.

This second plaintiffs' motion for summary judgment was denied on the same day (December 16, 1971) that the District Court granted defendants' motion for summary judgment; and both actions are the subjects of this appeal. The latter motion derived from the circumstance that, in December of 1969, Central, jointly with the Southern Railway Company and three other subsidiaries of Southern, applied to the Interstate Commerce Commission for authority to consolidate Central and the three other subsidiaries into a new corporation to be known as the Central of Georgia Railroad Company.[2]

In January of 1971 the application was approved by the Commission.[3] An intervenor's petition for reconsideration was denied in April, and, on June 1, 1971, the consolidation was consummated, with the effect that Central of Georgia *Railway* Company disappeared and its former preferred shareholders retained the right under the Commission's approval order to be paid $84 for each share formerly held, as representing the just and reasonable value thereof. As

of the time of argument in this court, eight persons owning 232 preferred shares (.1% of the preferred in being when the consolidation was effective) had not elected to take payment for their shares. These persons did not include appellant Oscar Altman.[4]

It is the principal contention of appellee Central in this court, as it was in the earlier proceedings involving the stay, that, under Schwabacher v. United States, 334 U.S. 182, 68 S.Ct. 958, 92 L. Ed. 1305 (1948), the federal statutory scheme for the regulation of railroad consolidations placed in the Commission the function of evaluating dividend claims of minority shareholders as part of the process of determining the compensation to be paid them upon the extinction of their shares. With this premise, it is asserted that appellants are in effect collaterally attacking in the courts an exercise of judgment confided exclusively by the Congress to the Commission in the first instance and subject only to direct challenge upon judicial review of the Commission's action. Since this approach is rested so heavily upon *Schwabacher,* we look to see what was involved in that case.[5]

Two interstate rail carriers sought, under Section 5 of the Interstate Com-

2. With the application filed, Central moved in the District Court to stay proceedings on the ground that the Commission now had exclusive jurisdiction to determine claims to preferred dividends as an incident to its statutory duty to fix just and reasonable compensation for the minority preferred shares. The District Court denied the stay, but allowed an interlocutory appeal, 28 U.S. C. 1292(b), which was accepted by this court. At oral argument of that appeal, the parties agreed to a suggestion by the court that the case be remanded to the District Court with instructions to stay the suit pending disposition by the Commission of the consolidation application; and such a remand was made.

3. Appellant Victor Altman intervened and participated in the Commission proceeding, but did not seek either reconsideration by the Commission of its approval order or judicial review thereof.

4. Plaintiffs-appellants Oscar and Victor Altman sued as individual owners of preferred

shares and on behalf of a class or classes of all persons owning preferred shares during the years when dividends were alleged to have been wrongfully withheld. At the time it dismissed the complaint in the order under appeal, the District Court also dismissed the action as a class suit. Its apparent reasoning on this point was that the class had become so small as to render class representation inappropriate. Although, in view of the disposition we make of this appeal, we need not reach this question, we note that Fed. R.Civ.P. 23(a)(1) contemplates that the class be "so numerous that joinder of all members is impracticable," and that the cases appear to call for larger numbers than were involved here. See, e. g., Atwood v. National Bank of Lima, 115 F.2d 861, 863 (6th Cir. 1940), and Moscarelli v. Stamm, 288 F.Supp. 453, 463 (E.D.N.Y.1968).

5. See also Suffin v. Pennsylvania R.R. Co., 276 F.Supp. 549 (D.Del.1967), aff'd, 396 F. 2d 75 (3rd Cir. 1968), cert. denied, 393 U.S. 1062, 89 S.Ct. 713, 21 L.Ed.2d 705 (1969).

merce Act, the Commission's approval and authorization of a plan for their merger. The Commission considered the terms and conditions of the plan, including the provisions made by it for the exchange of stock of the surviving corporation for the preferred stock of the merging corporation. The Commission found those terms and conditions just and reasonable, and approved the merger. The Commission's action was challenged on judicial review of its order by some minority preferred stockholders who had contended that under Michigan law—the state of incorporation—they had a charter right to a liquidation value of at least $172.50 per share. They complained that the plan, as approved by the Commission, awarded an exchange value substantially lower than the liquidation figure, thereby depriving them of their contractual rights under Michigan law.

The Commission did not purport to resolve this contention. It said only that the exchange terms of the plan were proper under the standards of the Interstate Commerce Act, and that any claims of further entitlement under state law, such as those pressed by the preferred shareholders, were left for resolution "through negotiation and litigation in the courts." No danger to the public interest would result, said the Commission, because the merged assets were so substantial, and the gross amount of the state law claims were, by comparison, so minor.

In the Supreme Court the complaining shareholders asserted that the Commission itself should have recognized the charter right under Michigan law, and directed that increased compensation in accordance therewith be made as a condition of merger approval. Contrarily, the Commission urged upon the Court that it had been correct in leaving that issue to future resolution by the parties through negotiation or litigation.

Both, said the Supreme Court, were wrong. The merger provisions of the Act were intended by the Congress to make the Commission, exercising federal power and applying federal law, the guardian in the first instance of the national interest in financially sound and viable railroad carriers. In achieving that end, the Commission was not bound by the provisions of state law but was, rather, "given complete control of the capital structure" resulting from a merger. Thus, the appellant shareholders misconceived the sweep of the Act in asserting that the Commission erred in not meticulously recognizing and implementing the rights to par value and accrued dividends allegedly conferred upon them by the charter and Michigan law. But so also did the Commission err in leaving it open for negotiation or litigation over these rights to thrust upon the surviving corporation a capital structure shaped by those rights instead of solely by the Commission's determination of what was fair and reasonable in the light of all relevant factors. It was, concluded the Court, the Commission's statutory duty to fix that capital structure finally in the merger proceeding, subject only to direct review by the courts of challenges to the propriety under the Act of the Commission's determinations.

It would appear, thus, that *Schwabacher* is dispositive of the litigation before us. Appellants' claim of right to additional dividends derives solely from state law, and it does not survive the final order of the Commission approving the consolidation, which order includes the provision of $84 in respect of each preferred share of Central. In discussing the attack on this figure made by intervening preferred shareholders, the Commission noted that the consolidation applicants, while contending that "intervenor Altman's lawsuit is without merit," also conceded "that many of the issues involved in his claim are relevant to a determination of the fair value of Old Central's preferred shares." They argued that the value of the corporate funds not paid out as dividends are reflected in the current financial statements and were taken into account in valuing the stock. Thus, said the Com-

mission, "[t]he preferred shareholders will receive the benefit of the earnings which the intervenor contended should have been paid out as dividends."

In its resolution of the protest against the $84 figure, the Commission concluded, after remarking that dividend arrearages were taken by it to be the $15 per share accumulation figure provided in the charter, that (1) "the yield of the preferred, Old Central's substantial negative working capital position, and the prevailing unfavorable investor attitude toward railroad securities in general all justify a cash consideration for Old Central's preferred stock of an amount less than its par or redemption value," and (2) the $84 was, under all the circumstances, fair and equitable.

It was argued to the Commission by intervenor Victor Altman that it was not proper for the Commission to value the preferred stock. The Commission rejected this contention, saying that "under the Act it is the duty of this Commission to consider all aspects of the transaction for which its approval is sought, including assurance that all minority shareholders are treated fairly and justly," and that it had, in the course of its valuation, "considered all pertinent factors, including the fact that there is a shareholders' law suit pending in Altman v. Central of Georgia R. Co. . . . ."[6]

The Commission then added this sentence: "Our action herein, however, has no bearing on the rights of the parties in that proceeding, and is not to be construed as being determinative of any issue therein." Appellants' contentions in this court rest mainly on this sentence, arguing that it exhibits the Commission's purpose to leave open for judicial resolution the claim of right to additional dividends under state law.[7]

It is not, however, the Commission's purpose (assuming it for the moment to have been as contended by appellants) that is controlling, but, rather, that of Congress. And in *Schwabacher* the Supreme Court held that latter purpose to be that state law claims of this character are to be taken into consideration by the Commission as a factor relevant to the determination of fair value, but they do not survive the valuation embodied in a final merger approval order. Thus, even if the Commission's language was intended by it to operate as appellants assert, it could not have, in law, the effect claimed for it.

Although, as just indicated, the question of the Commission's actual intent in using these words can be pretermitted, we think the District Court was probably correct in saying that "[t]he statement by the Commission that it has not made any determination of issues before and within the jurisdiction of this Court is merely one of comity." The major issue before the District Court was, of course, the reach of *Schwabacher* to these facts—and that is a question which the Commission could not, and undoubtedly had no thought of trying to, foreclose the courts from deciding. It has now been decided by the

---

6. To the extent that it is now the position of appellant Victor Altman that the Commission should have taken the state law claims into account, but did not in fact do so, at least to an adequate degree, he would appear to be foreclosed by the fact that, although he actively participated in the Commission proceeding, he neither sought reconsideration by the Commission of its action nor direct judicial review thereof. Note 3 *supra*. The Commission's responsibilities in this regard had long before been made known by the Supreme Court in *Schwabacher*.

7. A seemingly separate argument, at least as conceived by appellants, is that, since the approved consolidation plan contemplated that the "obligations and liabilities of the constituent corporations" continue as a charge upon the assets of the successor corporation emerging from the consolidation, their dividend claims survive on this basis. This District Court—correctly, we think—concluded that claims for undeclared dividends are not external debts like those of corporate creditors, and that only liabilities and obligations of that nature are comprehended within the language in question used in the plan. *See* Federal United Corp. v. Havender, 24 Del.Ch. 318, 11 A.2d 331 (1940).

District Court in the manner dictated by *Schwabacher,* and we uphold that decision.[8]

It is so ordered.

---

8. We see no need to address the issue of the effect of the by-law amendment in 1964, since *Schwabacher* stands in the way of relief on that theory as well. Appellants also assert that their efforts on behalf of the preferred stockholders resulted in the payment of a preferred dividend in 1969, and they complain here of the denial of their motion for allowance of expenses and attorney's fees. This motion was initially denied by the District Court in an order entered January 29, 1970 (Matthews, D. J.), but "without prejudice to plaintiffs' attorney to renew the motion at the conclusion of this litigation." In the Memorandum Opinion and Order of December 16, 1971, immediately before us, the District Court (Smith, D. J.) explicitly recognized that this matter remains open in accordance with the earlier order.