505 F.2d 105
 Brenda K. MONROE et al., Plaintiff-Appellant,
v.
BOARD OF COMMISSIONERS OF the CITY OF JACKSON, TENNESSEE,
and the Jackson Housing Authority, et al.,
Defendants-Appellees.
Brenda K. MONROE et al., Plaintiff-Cross-Appellees,
v.
BOARD OF COMMISSIONERS OF the CITY OF JACKSON, TENNESSEE, et
al., Defendants-Cross-Appellants.
Brenda K. MONROE et al., Plaintiffs-Cross-Appellees,
v.
JACKSON HOUSING AUTHORITY, Defendant-Cross-Appellant.
 Nos. 73-2249 to 73-2251.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1974.
 
 Avon N. Williams, Jr., Nashville, Tenn., J. Emmett Ballard, Jackson, Tenn., Norman J. Chachkin, Jack Greenberg, James M. Nabrit, III, R. Sylvia Drew, Kenneth J. Dious, New York City, for Brenda K. Monroe, and others.
 Robert J. Holt, Jr., Franklin Murchison, Jackson, Tenn., for Board of Commissioners of City of Jackson, Jackson Housing Authority, and others.
 Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.
 JOHN W. PECK, Circuit Judge.
 
 
 1
 This desegregation suit,[1] orginally commenced in 1963, appears before this court for the fourth time. A detailed history of prior proceedings is set out in our latest decision, Monroe v. Board of Commissioners of the City of Jackson, Tennessee, 453 F.2d 259 (6th Cir. 1972), wherein we remanded the cause to the district court for reconsideration of the elementary school assignment plan in light of Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 695 (1971); Davis v. Board of School Commissioners, 402 U.S. 33, 91 S.Ct. 1289, 28 L.Ed.2d 577 (1971); and Robinson v. Shelby County Board of Education, 442 F.2d 255 (6th Cir. 1971).
 
 
 2
 On remand, the district court held evidentiary hearings in which plaintiffs, the defendant Board of Commissioners (hereinafter 'the Board'), and the United States, as amicus curiae, participated. Throughout the hearings the Board took the position that it was operating the school system in conformity with constitutional requirements. Following the hearings, the district court permitted the parties and the amicus curiae to submit proposed findings of fact and conclusions of law. The United States filed a memorandum recommending, interalia, that the district court require further desegregation of the elementary schools. In response thereto, the Board presented a plan for further desegregation of the elementary schools, and in addition proposed the closing of the formerly all-black South Jackson Elementary School for the following school year with reassignment of its remaining students in a manner which would further desegregation.[2] Plaintiffs objected to the Board's plan as insufficient and to the proposal to close the South Jackson facility, and submitted an alternative desegregation plan developed by their expert witness, Dr. Michael Stolee.
 
 
 3
 In a memorandum opinion issued July 17, 1973, and an implementing order entered nunc pro tunc on August 28, 1973, the district court allowed the South Jackson closing, rejected the submissions of both the Board and the plaintiffs, and directed certain modifications of the Board's plan for the 1973-1974 school year. The court also awarded plaintiffs an attorney's fee of $1,500, but made the award without holding a hearing or otherwise affording plaintiffs an opportunity to tender evidence. This appeal by plaintiffs (No. 73-2249) and crossappeals by the Board (No. 73-2250) and the Jackson Housing Authority[3] (No. 73-2251) followed.
 
 
 4
 The jackson system's student population is approximately 50% Black. The actual attendance figures for the 1973-1974 school year showed that one of the eight elementary units was 98% Black and that two were less than 30% Black.[4] This plan required the busing of some 200 students from the former South Jackson facility to the Andrew Jackson and Highland Park Schools, a distance of up to 5.9 miles.
 
 
 5
 Plaintiffs complain that the Board failed to carry its burden of showing that the decision to close South Jackson Elementary School was based upon objective, non-racial factors, and that the district court erred in approving the closing. The record does not support this contention.
 
 
 6
 Based upon adequate evidence before it, the district court found as follows:
 
 
 7
 'South Jackson is old, costly to maintain, and the continuing urban renewal work indicates fewer and fewer students within a 'neighborhood' proximity to the school. To maintain a minimal necessary staff, cafeteria, and other facilities for as few as 200 to 225 students[5] in the Jackson system is administratively unsound and not feasible. The closing is part of a long range plan to eliminate this oldest operating school which is not directly related to racial motivation but rather the intent, largely unfulfilled, to upgrade slum housing occupied for the most part by blacks. It is not desirable from an educational viewpoint, nor from any other demonstrated to the Court, to assign large numbers of black or white students from newer and better physical structures to this school. The school is geographically located so as to make it not feasible to move other students into this nearby 40 year old facility by any changing of attendance boundary lines; this could only be accomplished by the expensive process of bussing or transporting white students from considerable distances into environment largely devoid of homes or residences-- an area in transition into commercial type development.'The district court listed what it considered the four pivotal factors in its decision to allow the closing as follows:
 
 
 8
 '(1) It is a comparatively inferior facility due to its age and state of repair, (2) it is located in the midst of a designated and rapidly changing urban renewal commercial area with little nearby present residential potential, (3) the steady decline in attendance of elementary school children there makes it impractical and unduly burdensome for its continued operation, and (4) there is no prospect of racial mixture in the school through changes in neighborhood residential patterns . . ..'
 
 
 9
 On the basis of the foregoing factors, the court specifically found 'the closing not to be associated with unconstitutional racial overtones.'
 
 
 10
 As the district court noted, proposals to close black schools which coincide with implementation of constitutionally required desegregation place the burden on school authorities to demonstrate that racial considerations did not result in the decision to cease operation of these facilities. Robinson v. Shelby County Board of Education, 467 F.2d 1187, 1200 (6th Cir. 1972) (McCree, J., concurring in part and dissenting in part); Haney v. Sevier County Board of Education, 429 F.2d 364 (8th Cir. 1970). We are satisfied that that burden has been met in this case and that the district court properly so ruled.
 
 
 11
 Plaintiffs urge that the closing of South Jackson will visit a disproportionate share of the inconveniences of desegregation on black students.[6] Responsive to this legitimate concern, we direct that the district court take such steps as may be necessary to ensure that the transition is made with minimal inconvenience to South Jackson's former students. In this connection, we stress that the transportation provided the children formerly attending South Jackson must be equal to the transportation provided other students transported within this school system.
 
 
 12
 Plaintiffs assert that even if the South Jackson closing is approved, the case must be returned to the district court to complete the process of desegregating the elementary schools. We agree. It is remarkable that the best efforts of the parties have not been sufficient to eliminate all-black schools from this small district. The plan approved by the district court leaves the Lincoln Elementary School 98% Black, and clearly this plan does not 'achieve the greatest possible degree of actual desegregation . . .' mandated by the Supreme Court. Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 26, 91 S.Ct. 1267, 1281 (1971). As the Swann Court stated, 'No per se rule can adequately embrace all the difficulties of reconciling the competing interests involved; but in a system with a history of segregation (such as in the instant case) the need for remedial criteria of sufficient specificity to assure a school authority's compliance with its constitutional duty warrants a presumption against schools that are substantially disproportionate in their racial composition.' Id. We are confident that the district court, with the aid of the parties, can eliminate this final aspect of segregation from the Jackson schools.
 
 
 13
 Lastly, plaintiffs complain that the $1,500 attorney's fee awarded them bears no relation either to the time and effort of counsel or to any other relevant considerations which ought to govern a district court's exercise of discretion in setting the amount of the award. Plaintiffs also point out that the district court failed to articulate the basis for its award or to permit the parties to introduce evidence on this matter. The letter fact makes it impossible for this court to determine the propriety of the award as such.
 
 
 14
 There is a strong policy in favor of awards of attorneys' fees in school desegregation cases, and plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Northcross v. Memphis Board of Education, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1972), quoting Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). Although it is within the district court's discretion to determine whether or not to award attorneys' fees, this court may review the reasonableness of any award made. Johnson v. Georgia Highway Express, Inc.,488 F.2d 714 (5th Cir. 1974). Because our review is dependent upon some sort of record of the basis for the decision below, we vacate the judgment insofar as it relates to the attorney's fee and remand the cause to the district court for findings of fact and conclusions of law as to the amount of any attorney's fee awarded under the standards of Bradley v. School Board of City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476(1974).
 
 
 15
 The judgment of the district court is affirmed in part and reversed in part and the cause is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 This case, consisting of three separately numbered appeals, was heard with Monroe v. County Board of Education of Madison County, 505 F.2d 109, 6 Cir., filed of even date herewith, but both cases were separately briefed
 
 
 [2]
 The Jackson Housing Authority was made a defendant below following its acquisition of the South Jackson Elementary School property from the City of Jackson on March 30, 1973. The contract of sale contained provisions that the defendant school authorities would have the right to retain possession and use the property until the district court acted upon the application to close the school and for reconveyance to the City should the court refuse the application
 
 
 [3]
 Supra, note 2
 
 
 [4]
 The following chart contains relevant statistical data concerning the eight elementary schools
 % Black, % Black,
 School Actual Actual
 ------ 1972-73 1973-74
 -------- --------
Alexander 36% 45%
Andrew Jackson 5% 28%
Highland Park 3% 24%
Lincoln 99% 98%
Parkview 46% 60%
South Johnson 98% ---
Washington-Douglas 98% 75%
West Jackson 42% 43%
Whitehall 58% 56%
 
 
 [5]
 Enrollment at South Jackson declined from 508 in 1967-68 to 243 during the third month of the 1972-73 school year, and projected attendance for 1973-74 was less still
 
 
 [6]
 Kelley v. Metropolitan County Board of Education of Nashville, Tennessee, 463 P.2d 732 (6th Cir. 1972)