Oscar L. ALTMAN et al., Appellants,

v.

CENTRAL OF GEORGIA RAILWAY COMPANY et al.

Oscar L. ALTMAN et al.

v.

CENTRAL OF GEORGIA RAILWAY COMPANY et al., Appellants.

Nos. 77–1301, 77–1315.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 11, 1978.

Decided May 19, 1978.

Victor A. Altman, Washington, D. C., for appellants in No. 77–1301 and appellees in No. 77–1315.

John W. Douglas, Washington, D. C., with whom Charles A. Horsky and James Hamilton, Washington, D. C., were on the brief for appellees in No. 77–1301 and appellants in No. 77–1315.

Before BAZELON, McGOWAN and MacKINNON, Circuit Judges.

Opinion for the court filed by Circuit Judge MacKINNON.

Opinion filed by Circuit Judge BAZELON, concurring in part and dissenting in part.

Opinion filed by Circuit Judge McGOWAN, concurring in the result.

MacKINNON, Circuit Judge:

The subject of this appeal concerns the alleged inadequacy of the attorney's fees awarded in district court for legal services rendered in the course of litigating a shareholders' suit which this court held in *Altman v. Central of Georgia Railway Co.*, 176 U.S.App.D.C. 326, 540 F.2d 1105 (1976) had caused Central Railway of Georgia (Railway) to pay a dividend on preferred stock of $852,000. The litigation in this case has been pending for approximately twelve years and allegedly required nearly 2,500 hours of legal work on the part of appellants alone. On remand from this court to determine the proper amount of attorney's fees, the trial court—expressing some confusion, due to a corporate consolidation, concerning who should be held liable for the fees assessed—awarded $40,000 in fees and $3,206.44 in costs, as compared with appellants' suggested fee of $249,075, $3,206.44 in costs, and a bonus of unspecified size as compensation for the fact that all the services in the case had been rendered on a purely contingent fee basis.[1] Appellants now challenge the trial court's award as inadequate; the only issue we must confront is the amount, not the validity of the awarding, of the fees.[2]

The labyrinthine docket record of this litigation need not detain us. Suffice it to say that this case has been before this court on appeal six times, involving various questions, and that it has produced a considerable number of complex points of law and capable arguments by counsel. In weighing the adequacy of the award made by the trial court, the complexity of the issues and the skill of counsel are matters to be considered, *see Swanson v. American Consumer Industries*, 517 F.2d 555 (7th Cir. 1975); 6 *Moore's Federal Practice* ¶ 54.77[2] at 1716 (2d ed. 1976); as is the question of the "productivity" of the work performed. The awarding of attorney's fees is generally considered "exceptional" in American law, *see, e. g., Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Rude v. Buchalter*, 286 U.S. 451, 459, 52 S.Ct. 605, 76 L.Ed.2d 1221 (1932), but such fees may be awarded where the attorney has conferred a benefit on others through undertaking the risks and expense of bringing suit, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 165–167, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Kahan v. Rosenstiel*, 424 F.2d 161, 168 (3d Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970), on remand, 315 F.Supp. 1391 (D.Del.1970). It would, however, be inappropriate to award fees for efforts which were not productive of any benefit.

■ There is no allegation here that one of the parties acted in bad faith, vexatiously, or for oppressive reasons—other grounds for which attorney's fees are occasionally awarded, *First National Bank of Sioux Falls v. Dunham*, 471 F.2d 712 (8th Cir. 1973); *Guardian Trust Co. v. Kansas City*

---

1. Courts have generally recognized that the fact that legal services were rendered on a contingent basis entitles the attorneys involved to some added compensation, *e. g., Levin v. Mississippi River Corp.*, 377 F.Supp. 926 (S.D. N.Y.1974), *aff'd* 508 F.2d 836 (2d Cir. 1974), *cert. denied*, 425 U.S. 913, 96 S.Ct. 1510, 47 L.Ed.2d 763, *reh. denied*, 425 U.S. 1000, 96 S.Ct. 2218, 48 L.Ed.2d 825 (1975). We note also that $100 per hour is often held a reasona-

ble rate at which to compute fees, *e. g., National Treasury Employees Union v. Nixon*, 172 U.S.App.D.C. 217, 232, 521 F.2d 317, 332 (1975); *Evans v. Sheraton Park Hotel*, 164 U.S. App.D.C. 86, 503 F.2d 177 (1974).

2. The validity of appellants' fee request was settled in our opinion in *Altman v. Central of Georgia Railway Co.*, 176 U.S.App.D.C. 326, 540 F.2d 1105 (1976).

*Southern Railway*, 28 F.2d 233 (8th Cir. 1928), *rev'd on other grounds*, 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659 (1930). It is not necessary, despite the position appellees appear to adopt,[3] that any actual fund be created or preserved in order for fees to be allowed, *Mills v. Electric Auto-Lite, Co., supra.* "If a court ultimately decides that a plaintiff created substantial benefit for others it could find it inequitable to deprive plaintiff of counsel fees merely because defendants prevented the physical creation of the fund." *Kahan v. Rosenstiel, supra*, 424 F.2d at 168; but the fees granted in the absence of evidence of bad faith or oppression should reflect the effort productive of the benefit conferred, not merely the number of unproductive hours worked.

In this case, the trial court, without elaborating its reasons, determined that $40,000 was "a reasonable fee for the *productive work* done by counsel."[4] The record does not disclose the precise calculations by which the trial court arrived at this figure, but the general outlines of its approach, distinguishing between productive and unproductive legal work, is quite clear. Although it is true that a district court's order awarding fees should disclose the basis on which the award was determined, *Mims v. Wilson*, 514 F.2d 106 (5th Cir. 1975); *Monroe v. Board of Commissioners of City of Jackson, Tenn.*, 505 F.2d 105 (6th Cir. 1974); the purpose of such disclosure is chiefly to allow "meaningful review" of the amount awarded, *Mims v. Wilson, supra; Baxter v. Savannah Sugar Refining Co.*, 495 F.2d 437, 447 (5th Cir.), *cert. denied*, 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974).

Also, since it was the prior opinion of this court that exhaustively reviewed the entire record in this lengthy litigation and decreed the limited basis upon which appellants were entitled to prevail, we are thoroughly familiar with the attorneys' work that was productive and that which was not. In this case, where the skill of the lawyers involved, the complexity and validity of the issues, and the importance of certain aspects of the case are not in serious doubt, it would have been an expounding of the obvious for the trial judge to rehearse his evaluation of these various factors.

The crucial question in determining the amount of the fees to be awarded to appellants was what portion of their work could properly be deemed productive of that benefit, the creation of which was the basis of their being awarded a fee. The district court explicitly considered this factor, and its determination is a matter within its discretion, *Harrison v. Perea*, 168 U.S. 311, 18 S.Ct. 129, 42 L.Ed. 478 (1897); *Ferguson v. Winn Parish Police Jury*, 528 F.2d 592 (5th Cir. 1976); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). While courts of appeal do on occasion adjust the amount of the fee awarded by the trial court, *In re Boston & Providence R. Corp.*, 501 F.2d 545 (1st Cir. 1974); *Johnson v. Georgia Highway Express, Inc., supra*; we do not feel that there has been any abuse of discretion in this case, *see Swanson v. American Consumer Industries, Inc. supra; Walker v. Columbia Broadcasting System, Inc.*, 443 F.2d 33 (7th Cir. 1971). Given the various lengthy and arguably "unproductive" procedural motions involved in this litigation, we are not convinced that the judgment of the district court was "clearly insufficient," *see People of Sioux County v. National Surety Co.*, 276 U.S. 238, 48 S.Ct. 239, 72 L.Ed. 547 (1928). Nor do we find the trial court's order to be inadequate, though it is terse and devoid of any elaboration of the basis upon which it acted.

In reaching this conclusion, as referred to above, we take into consideration the knowledge of the proceedings that we acquired from a thorough review of the entire record when we finally found for the appellants and the knowledge we acquired of the work of counsel when the case was before us on other prior occasions. Essentially what happened in this case was that appellants over many years litigated on the theo-

---

3. *See* Brief for Appellees 6–8.

4. J.A. 20.

ry that the corporation should have declared certain dividends. The corporation correctly answered that it did not have sufficient money and that what earnings it did have were properly used in maintenance, etc. Appellants were not prevailing in this extended litigation when all of a sudden the corporation had a tax adjustment that put it in a position to pay a dividend. However, it failed to do so until appellants made a new demand. Thereafter, the corporation paid the dividend, and we held that appellants' demand had caused the dividend to be declared. Thus, the lawyers were embarked on a losing venture when they chanced upon a newly developed source of payment that permitted them to achieve a favorable result for that single year. Thus, most of the litigation effort was unproductive. The legal work necessary to cause the payment of the dividend was relatively minimal. Accordingly, we affirm the award of $40,000 plus costs.

█ One peculiarity of this case involves the difficulty of determining the party against whom the attorney's fees should be assessed. After the shareholders' suit was filed, Central of Georgia *Railway* Company (Railway) was consolidated with three other subsidiaries of Southern Railway Company (Southern) to form a new entity, Central of Georgia *Railroad* Company (Railroad). The ICC order approving the merger contained a provision that the new entity be obligated to pay $84 per share to each holder of Railway's preferred stock. This dividend was the result of appellants' efforts to force a declaration of a dividend on the preferred shares.[5] At the time the dividend in question was declared, Southern owned 93% of Railway's preferred stock,[6] and thus received the vast majority of the dividend obtained through appellants' suit. The most obvious beneficiary of appellant's litigation, is Southern, and they are the party

against whom the fees would ordinarily be most appropriately assessed. In this case, however, in that Southern owned Railway to a very large extent,[7] its receipt of a dividend was largely an unwanted bookkeeping entry. This situation clearly presents an anomaly in terms of determining who has indeed "benefitted" from appellants' success in the courts.

In such circumstances, it is fair to regard Southern as one would any other shareholder that has benefitted in this regard. Otherwise, a parent corporation, by owning a large part of the shares of its subsidiary, could virtually preclude shareholders' suits by the few minority shareholders who did exist because the stock ownership by the parent company would eliminate the possibility of establishing a large enough "fund" adequately to compensate significant legal action. Technically, the district court assessed the fees against Railway, but Railway was a subsidiary of Southern, as is its successor, Railroad. Moreover, when this court considered the effect of the ICC's approval of the consolidation which resulted in the formation of Railroad, it agreed that the ICC order had precluded any further suit for dividends allegedly improperly omitted by Railway, but it expressly left open the question of payment of appellants' attorney's fees possibly owing from Railway.[8] Thus, now that these fees have been assessed against Railway, they naturally become a liability of Railroad as the successor of Railway. Upon a merger or consolidation the general rule of law is that the successor corporation becomes obligated to pay the debts and liabilities of the constituent companies. *Pullman Car Co. v. Missouri Pacific Co.,* 115 U.S. 587, 6 S.Ct. 194, 29 L.Ed. 499 (1885); *Mount Pleasant v. Beckwith,* 100 U.S. 514, 25 L.Ed. 699 (1879); *Cyr v. B. Offen & Co., Inc.,* 501 F.2d 1145, (1st

---

5. For a description of the details of this consolidation and the effect of the ICC ruling, *see Altman v. Central of Georgia Railway Co.,* 176 U.S.App.D.C. 326, 540 F.2d 1105 (1976).

6. *Altman v. Central of Georgia Railway Co.,* 124 U.S.App.D.C. 155, 157, 363 F.2d 284, 286 (1966).

7. *Id.* Southern also owned 96% of Central of Georgia Railway Company's common stock.

8. *Altman v. Central of Georgia Railway Company,* 159 U.S.App.D.C. 402, 407, 488 F.2d 1302, 1307 (1973).

Cir. 1974); *Hocke Products, S. A. v. Jayark Films Corp.,* 256 F.Supp. 291 (S.D.N.Y. 1966); and *see Forest Laboratories, Inc. v. Pillsbury Company,* 452 F.2d 621, 625 (7th Cir. 1971); *Arthur Elevator Co. v. Grove* (Iowa), 236 N.W.2d 383 (1975); 15 Fletcher, Cyclopedia Corporations, §§ 7117, 7122, pp. 179, 189 (1973 Rev. ed.); 19 Am.Jur.2d *Corporations* § 1554, p. 930 (1965). As the Supreme Court of South Carolina stated in *Stephenson Finance Company v. South Carolina Tax Comm.,* 242 S.C. 98, 130 S.E.2d 72, 76 (1963): "a transfer of assets and assumption of liabilities are the essence of corporate consolidation or merger." We thus approve the imposition of the entire fee and costs upon Railway and its successor Railroad which means, in effect, that the individual shareholders will not be required to pay any portion thereof. The imposition of the fee and costs on Railroad and ultimately on Southern is consonant with the view that in cases such as these, involving "corporate therapeutics," it may be said that the corporation itself benefits through the correction of the improper practices of its directors, and that accordingly it is fitting that the corporation pay for the reasonable cost of the litigation, even where it cannot be shown to have received any monetary benefit, *see Mills v. Electric Auto-Lite,* 396 U.S. at 389–397, 90 S.Ct. 616.

The judgment of the district court is affirmed in all respects.

*So Ordered.*

BAZELON, Circuit Judge, concurring in part and dissenting in part:

I agree with Judge MacKinnon's conclusion that an award of attorney's fees is appropriate in this case, and I also concur with his general analysis of the "productive" work requiring compensation. *See* maj. op. at ——— of 188 U.S.App.D.C., at 661–662 of 580 F.2d. The calculation of attorney's fees, however, lies in the discretion of the district court, and so that we may meaningfully review the exercise of that discretion we have required the district court to create "a record that elucidates the factors that contributed to the fee

decision and upon which it was based." *Evans v. Sheraton Park Hotel,* 164 U.S.App. D.C. 86, 97, 503 F.2d 177, 188 (1974). In this case we simply have no idea as to the bases for the district court's decision. Although the court was concerned with "productive work," we don't know what work it considered productive or what fee scale it adopted. Nor do we know how much time Altman actually spent laboring on the "productive work" which the majority concludes is worthy of compensation. For these reasons I believe the case should be remanded to the district court for the creation of an appropriate record.

McGOWAN, Circuit Judge, concurring in the result:

But for the fact that the law of this case, by virtue of an earlier decision by a division of this court, 176 U.S.App.D.C. 326, 540 F.2d 1105 (1976), appears to be that appellant is entitled to attorney's fees in some amount, I would have great difficulty in reaching that conclusion. The Supreme Court has, recently and emphatically, recognized and reaffirmed the American tradition to be that, in the absence of authorizing statute or contractual commitment, a successful litigant is not entitled to attorney's fees. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); and *see Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

There is, of course, the judicially created exception where the efforts of one member of a class have brought into being a fund benefitting all the members of that class. *F. D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). It was indeed by express reference to this exception that appellant first pressed upon the District Court his entitlement to attorney's fees. In order for that exception to be operative, however, there must be before the court (1) a fund from which the fees can be paid, and (2) the

members of the class to which it is to be distributed.[1]

Neither exists in this case. Although appellant asked the District Court not to permit the dividend payment in question until his claim against it had been satisfied, arguing that the dissipation of the fund would frustrate the legal theory on which that claim was based, he did not pursue all of the remedies available to him to prevent that dissipation. Neither did he ever seek certification of the asserted benefitted class who should share the burden of the fees.[2]

Viewing as I apparently must, however, the issue presently before us as confined to the propriety of the amount awarded by the judgment appealed from, I join in the affirmance for the reasons stated by Judge MacKinnon. Since the fixing of attorney's fees resides in the District Court's discretion, we are lacking in explication of how that discretion was exercised in this instance. But this litigation has been of long duration and has engaged this court's attention a number of times.[3]

As Judge MacKinnon demonstrates, this court is quite familiar with the portion of appellant's efforts that proved productive. That portion was far less than his total exertions, and the fee fixed comfortably accommodates it under any set of assumptions. In any event, appellees are not pressing an objection to the amount of the award, as distinct from its propriety in law, and urge its affirmance if any award is to be regarded as proper at all. Under these circumstances, I see no necessity for a further remand.

---

1. For cases in this court recognizing the so-called fund-benefits exception, and the conditions under which it can effectively be applied, see *Yablonski v. United Mine Workers of America,* 151 U.S.App.D.C. 253, 466 F.2d 424 (1972); *Schleit v. British Overseas Airways Corp.,* 133 U.S.App.D.C. 273, 410 F.2d 261 (1969); *Walsh v. National Savings & Trust Co.,* 101 U.S.App.D.C. 195, 247 F.2d 781 (1957); *Washington Gas Light Co. v. Baker,* 90 U.S. App.D.C. 98, 195 F.2d 29 (1951). *Generally, see Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), and *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

2. When appellees on their own initiative sought a determination of the class question, the District Court ruled that the action was not properly to be regarded as a class action. In *Alt-*

man *v. Central of Georgia Ry. Co.,* 159 U.S. App.D.C. 402, 404 n.4, 488 F.2d 1302, 1304 n.4 (1973), this court referred to this ruling with seeming approval insofar as it appeared to reflect the requirement of Rule 23(a)(1), FRCP, that the class be so numerous as to make joinder of the members impracticable. In the case before us the small number of shareholders affected by the dividend would appear to have made joinder feasible. *Id.*

3. *Altman v. Central of Georgia Ry. Co.,* 124 U.S.App.D.C. 155, 363 F.2d 284, *cert. denied,* 385 U.S. 920, 87 S.Ct. 231, 17 L.Ed.2d 144 (1966); *Altman v. Central of Georgia Ry. Co.,* 159 U.S.App.D.C. 402, 488 F.2d 1302 (1973); *Altman v. Central of Georgia Ry. Co.,* 176 U.S. App.D.C. 326, 540 F.2d 1105 (1976).